SAVILLE, SOMES & CO. *v.* JACOB C. WELCH.

*Principal and Agent. Assumpsit. Pleading. Reference. Amendment.*

1. There can be no ratification of an agent's acts by the principal without a knowledge of the material facts; thus, A fraudulently obtained possession of a chest of tea by ordering it of the plaintiff in the name of the defendant, who received a bill or invoice of the tea, and delivered the bill to A on his request and on being told by A that he ordered it as he did lest it might be attached; but A did not tell the defendant that it was bought on his credit; and defendant gave no notice that he was not the purchaser; *Held*, that the mere silence of the defendant was not a ratification.

2. The tea with other goods subsequently was sold at auction under the statute on a chattel mortgage owned by the defendant, and was bid off by him; *Held*, that this purchase was not a ratification by the defendant, as he supposed that A was the owner.

3. PLEADING—ASSUMPSIT. The proceeds of the auction sale were applied on the defendant's mortgage debt against A; but it did not appear how much the tea thus obtained by fraud sold for; *Held*, assuming that the title never passed, that the case is not within the rule, that when one's property is wrongfully taken and converted into money or its equivalent, the owner may waive the tort and sue in assumpsit; and that the plaintiff's only remedy was trespass or trover.

4. AMENDMENT—REFERENCE. An amendment that changes the form of action is not allowable.

ASSUMPSIT. Heard on a referee's report, June Term, 1886, Ross, J., presiding. Judgment for the defendant.

The master found:

"One Wilson, then and now selling goods as travelling agent for Saville, Somes & Co., on the 19th of October, 1882, sold a bill of goods to J. C. Ide. A portion of this bill was to fall due in 30 days, which was paid by said J. C. Ide when it fell due. The balance, which was a chest of tea, price $24.64, was due in four months, and is the matter in contro-

versy in the suit. Wilson had sold J. C. Ide goods prior to this date, but he was at that time owing Saville, Somes & Co. an unpaid judgment. July 18, 1882, J. C. Ide had been put into insolvency by a petition returnable Aug. 6, 1882, and the case was ended by compromise on the 16th day of September, 1882.

"J. C. Ide told Wilson that he was selling for J. C. Welch, that he was doing business for J. C. Welch, the defendant, and that he bought some goods. From what was said Wilson understood from J. C. Ide that he was authorized to purchase merchandise for and pledge the credit of J. C. Welch, and had a right so to understand.

"Wilson sold the goods and entered the sale as to J. C. Welch and sent the order to his principals as an order from J. C. Welch. The goods were forwarded to Lyndon, to the address of J. C. Welch. There was some dispute about who took them from the freight house, but I find the facts from a strong preponderance of evidence, that J. C. Ide went to the station and inquired for an invoice of goods addressed to J. C. Welch, and told the station agent that they were for him, J. C. Ide, and took them away. In the mean time the bill or invoice of said goods had been sent to J. C. Welch, who, not understanding it, went to J. M. Weeks, a trader near him, and asked if he had ordered such a bill of goods, thinking that a mistake had been made in billing the goods. He learned that Weeks had not ordered the goods. Soon after J. C. Ide came in and asked Welch if he had received a bill of goods from Saville, Somes & Co., that he had ordered a bill in his, Welch's, name, fearing lest if ordered in his own name they might be attached; that he had received the goods and had them at his store and wanted the bill to mark them by. Welch gave Ide the bill. This all transpired very soon after the date of the sale. Welch did not then notify Saville, Somes & Co. that he had not authorized J. C. Ide to buy goods in his name."

It also appeared, that, on June 6, 1882, said J. C. Ide had executed a chattel mortgage to H. C. Ide and J. C. Welch, which included the following:

"My stock of merchandise including drugs and medicines contained in my store in the village of Lyndon now occupied by me, meaning hereby to include all goods I now have on

Saville, Somes & Co. *v.* Welch.

hand as per inventory, and all goods hereafter purchased by me, to replenish the stock, hereby agreeing to keep said stock good; that is, in amount up to its present value."

It was also found:

"These goods having been taken possession of by the mortgagees, because of breach of condition of said mortgage, and having been duly advertised, were sold at auction on the 26th day of October, 1882. The goods were bid off by J. C. Welch; and it was agreed that J. C. Ide might do business, still retaining the goods in the name and under the style of J. C. Ide, Agent; and he ordered all his goods under this title after the auction sale. By agreement of J. C. Welch and H. C. Ide he was to act as their agent and account to them for his sales, and continued to do business in this way till Dec. 6, 1882, when the goods and uncollected accounts went into the hands of J. C. Welch and H. C. Ide.

"At no time did J. C. Welch and H. C. Ide authorize J. C. Ide to buy goods in their names or to pledge their credit except so far as this was done by authorizing him to do business and make purchases under the name of J. C. Ide, Agent.

"When Welch, on the 26th day of October, bought Ide's goods at auction, this chest of tea in controversy was entire, none having been sold. During the time that Ide was doing business under the style, J. C. Ide, Agent, one Stevens bought ten pounds of this tea, and after the taking of accounts by Welch, 6th of December, 1882, he, Welch, collected of Stevens the pay for this tea. Said Welch had the tea which remained unsold on 6th of December, having purchased it at the auction sale."

*Geo. W. & G. C. Cahoon,* for the plaintiffs.

The goods were never sold to Ide and the title never vested in him. 1 Par. Con. 475; 1 Benj. Sales, 322, s. 309 *n.*, s. 636. The plaintiffs then are the owners, unless the facts constitute an agency by ratification; and we insist that they do. *Alexander* v. *Bank,* 24 Vt. 222; Rob. Dig. 602.

Upon an unquestioned state of facts, whether such facts operate a ratification is a question of law. *Bank* v. *Fassett,* 42 Vt. 439; Rob. Dig. 19.

Saville, Somes & Co. v. Welch.

"If the principal accept, receive, and hold the proceeds or beneficial results of such a contract he will be estopped from denying an original authority on a ratification." 1 Par. Con. 49; Paley Agency, 249; *Spooner* v. *Thompson,* 48 Vt. 259.

Welch did not disavow the acts of Ide when they came to his knowledge; he therefore made them his own. Paley Agency, 143; 2 Greenl. Ev. s. 66; Story Agency, ss. 95, 253; *Knight* v. *Luce,* 116 Mass. 586; *Bank* v. *Fassett,* 42 Vt. 438; *Lindsley* v. *Malone,* 23 Pa. St. 24; *Brigham* v. *Peters,* 1 Gray, 147. The title could not pass to defendant under the mortgage; because Ide could convey no interest in what he did not own. APPLETON, Ch. J., in *Griffith* v. *Douglass,* 73 Me.; 26 Alb. L. Jour. 210; Jones Ch. Mort. 138. Assumpsit will lie whether the court find an agency by ratification, or a conversion of the goods into money. Rob. Dig. 52. The reference cures any defects as to form of action. *Granite Co.* v. *Farrar,* 53 Vt. 587; Rob. Dig. 600; *Laport* v. *Bacon,* 48 Vt. 176; *Briggs* v. *Oakes,* 26 Vt. 138.

*Harry Blodgett,* for the defendant.

The defendant was under no legal obligation to give notice that he had not purchased the goods. *White* v. *Langdon,* 30 Vt. 599; *Strong* v. *Ellsworth,* 26 Vt. 366. There can be no ratification without knowledge of the facts. *Spooner* v. *Thompson,* 48 Vt. 259; *Combs* v. *Scott,* 12 Allen, 493; *Owings* v. *Hull,* 9 Pet. 607; *Hovey* v. *Brown,* 59 N. H. 114. The purchase at the auction sale was not a ratification. *Hastings* v. *Bangor House,* 18 Me. 436. There must be full knowledge or there is no ratification. 29 Am. Dec. 554. *White* v. *Davidson,* 18 Md. 169; Story Agency, s. 256; Whar. Ag. s. 86; *Bushby* v. *Ins. Co.* 40 Md. 588.

Assumpsit will not lie. *Burnap* v. *Partridge,* 3 Vt. 144; *Kidney* v. *Persons,* 41 Vt. 387; *Stevens* v. *Dillingham,* 22 Vt. 624; *Phelps* v. *Conant,* 30 Vt. 277; *Elwell* v. *Martin,* 32 Vt. 220; *Scott* v. *Lance,* 21 Vt. 513.

The opinion of the court was delivered by

VEAZEY, J. Under the transaction between the plaintiffs and Ide the title to the tea remained in the plaintiffs. They did not sell to Ide, but were led to suppose by Ide's fraud that they sold to Welch. But there was no sale to him because he did not authorize Ide to buy for him. The plaintiffs, however, have brought assumpsit against Welch and claim to recover on the ground that he ratified the unauthorized act of Ide. This claim falls because Welch did not know the goods were bought on his credit. Subsequently to the transaction Welch received a bill of the goods from the plaintiffs, as he supposed by mistake, but was soon told by Ide that he had ordered in his, Welch's, name, fearing lest if ordered in his own name the goods might be attached, and that he had received the goods and wanted the bill, and took it. He said nothing about buying on Welch's credit or that the goods were not paid for. Welch was notified of nothing that he was called upon to disavow. *Strong* v. *Ellsworth*, 26 Vt. 366; *White* v. *Langdon*, 30 Vt. 599. The only fault alleged is that he was silent when he ought to have spoken. One sufficient answer is that he had no knowledge of the misleading fact. Nothing is more familiar than that there can be no ratification without knowledge of the material facts. For the same reason Welch's purchase of the tea cannot constitute a ratification. He bought it as Ide's tea without knowledge that it was not his tea.

Another ground of claim is that assumpsit for money had and received will lie against Welch on account of his possession and disposition of the tea under the chattel mortgage.

He and his co-mortgagee took possession of the whole stock including this chest of tea, because of breach of condition of the mortgage, and caused the same to be sold under the statute, and Welch bid off the entire stock, and the proceeds were applied on the mortgagees' previous debt against Ide.

Passing the point as to whether the defendant Welch got

in this transaction a superior right to that of the plaintiffs, and assuming that he did not, but would be liable in trover, is he liable in this action for money had and received?

When the plaintiff's property has been wrongfully taken or appropriated and converted into money or its equivalent he may waive the tort and recover of the wrong-doer in assumpsit. This has been so held in numerous cases in this State since *Burnap* v. *Partridge*, 3 Vt. 144. But it must appear that the defendant has actually received money to the use of the plaintiff, or that he has received that which he considered as equivalent thereto and accounted for as such, —as a promissory note or negotiable paper, or the satisfaction of a money demand. *Kidney* v. *Persons*, 41 Vt. 386, 392.

He seeks to recover not damages for the wrongful taking to be measured by the value of the property, but for the money actually realized out of the property taken. He waives all tort, trespass, and damages, and claims only the money which the defendant has actually received and interest thereon, and is limited to that. Greenl. Ev. vol. 2, s. 117. As expressed by Lord MANSFIELD in *Lindon* v. *Hooper*, Cowp. 414, "He is liable only to refund what he has actually received, contrary to conscience and equity"; and to the same effect in *Moses* v. *Macferlan*, 2 Burr. 1005.

A different rule is stated in cases standing on grounds peculiar to their special facts, as pointed out by PROUT, J., in *Kidney* v. *Persons, supra*, where he says, speaking of exceptional cases : "When property has been received in satisfaction of a money demand, in a legal sense it is equivalent to money." But in such case we conceive it must be shown in what amount the application was made. This tea was received to be applied on a money demand, the mortgage debt, through a sale under the statute. But the case utterly fails to show how much that money demand was, or what the tea sold for, or how far the proceeds of it went in satisfaction of the demand. The tea still remained in the possession of Welch as he was the buyer. A small quantity

was afterwards sold in his behalf, but the report does not show what he got for it. Upon whatever ground we attempt to put the case for the plaintiffs, we find a deficiency in the facts reported.

The plaintiffs' remedy therefore, if they have any, is necessarily limited to trespass or trover. An amendment of the declaration that changes the form of action is not allowable. *Waterman* v. *R. R. Co.* 30 Vt. 610. It is only legally amendable defects that a reference cures. *Sumner* v. *Brown*, 34 Vt. 194.

Judgment affirmed.