## SCHUTZ and others *v.* JORDAN and others.

*(Circuit Court, S. D. New York.* August 17, 1887.)

1. PRINCIPAL AND AGENT—PURCHASING AGENT—RATIFICATION BY—RETENTION OF GOODS SOLD.

In an action for goods sold and delivered, the evidence showed that defendants, engaged in a large mercantile business, employed a superintendent in their retail cloak and suit department, with authority to purchase goods as needed for that department, and to whom invoices of and all correspondence relating to such goods were intrusted; that defendants had discovered that the superintendent was inclined to carry more goods in that department than was desirable, and that he had been ordered to keep down the stock; that, when plaintiff's salesman applied to him shortly after for orders, he told him that he was already carrying more goods than the firm allowed, but that, if the plaintiffs would not have any statements of account or dunning letters sent to the house, the goods might be sent, and the invoices might be sent as usual, for they would come to him anyhow; and that he would pass the invoices as fast as he could. This scheme was communicated to the plaintiffs, and assented to by them, and, in pursuance thereof, large quantities of goods were shipped, received by the superintendent, some of the bills paid by his direction, and many of the goods disposed of in the usual course of trade. When defendants at last discovered what the superintendent had been doing, and with knowledge that plaintiffs claimed that all the goods had been sold to the house, they laid out all the goods remaining on hand which had come from plaintiffs, in order to ascertain whether any of them were goods which had not been paid for, but were unable to determine whether they were or not, and they were thereupon put back into the stock, and sold; that after the discovery other goods were received from plaintiffs, under the same arrangement, and were refused and returned. *Held,* that the defendants did not ratify the unauthorized acts of the superintendent by retaining and selling the goods after discovery, and that plaintiffs could not recover the price of them.[1]

2. SAME—KNOWLEDGE OF PRINCIPAL—MAILING INVOICE—COURSE OF BUSINESS.

In such action, it was sought to charge the defendants with knowledge by showing that the invoices for goods purchased by the superintendent under the unauthorized arrangement had been mailed to the defendants at their place of business. The jury were instructed that the fact that the invoices were so sent would not in law establish the fact that the defendants received them, and would not be proof of that fact, and that the presumption arising from mailing notices in cases of negotiable instruments did not apply. *Held,* in view of the evidence showing the course of business to be that such invoices were received by the superintendent, and not by the defendants personally, that the instruction was practically correct.

3. TRIAL—INSTRUCTIONS TO JURY.

In the trial of a case, a correct apprehension by the court of all the principles of law involved is not demanded; but it is sufficient if the instructions are correct, as applicable to the case presented, and that the court should not be wrong to the extent of misleading the jury.

*Blumenstiel & Hirsch,* for plaintiffs.
*Stern & Myers,* for defendants.

[1] As to what will constitute a ratification by a principal of the unauthorized acts of an agent, and the effect of such a ratification, see Nichols v. Shaffer, (Mich.) 30 N. W. Rep. 383, and note; Stillman v. Fitzgerald, (Minn.) 33 N. W. Rep. 564; Forcheimer v. Stewart, (Iowa,) 32 N. W. Rep. 665; Mortgage Co. v. Henderson, (Ind.) 12 N. E. Rep. 88; Metcalf v. Williams, (Mass.) 11 N. E. Rep. 700; Shinn v. Hicks, (Tex.) 4 S. W. Rep. 486; Thread Co. v. Manufacturing Co., (Pa.) 8 Atl. Rep. 794; Culver v. Warren, (Kan.) 13 Pac. Rep. 577.

WHEELER, J. This is an action for goods sold and delivered, consisting of cloaks and suits, to the amount of $32,604.99. On the trial the plaintiffs' evidence tended to show that they forwarded from their manufacturing establishment in New York, to the defendants' mercantile house in Boston, these goods to that amount, at various times between May, 1884, and August, 1885, on orders received by their salesman from the superintendent of the retail cloak and suit department of the defendants, who had given like orders before; that they sent invoices of the goods directed to the defendants, by mail, at the several times when the goods were sent; that they sent statements of accounts of the goods to the defendants by mail at some times, and particularly in August and December, 1884; and that the goods had not been paid for.

The defendants' evidence tended to show that the course of business in their house was such that goods bought and delivered were received by a person whose duty it was to keep a record of the packages, and forward them to the department where they belonged; that correspondence was received by a clerk, who sent invoices of goods bought where they would be received by the superintendent of the department for which they were bought, and all correspondence relating to goods bought to the buyer, and all statements of accounts for goods bought to a bookkeeper, who paid them when found to be correct; that the superintendent, when the invoices were received by him, would pass them as correct, if found to be so, and mark them as correct, and the person who received the goods would do the like, when they would go to that bookkeeper, and be entered on the books and be paid for according to the invoices so passed and received; that the superintendent of this department was inclined to carry more goods than the firm desired, and was directed to keep down the stock; that, when the plaintiffs' salesman applied to him for orders, he told him that he was already carrying more goods than the firm allowed, but that, if he would not have any statements of accounts or dunning letters sent to the house, the goods might be sent, and the invoices might be sent by mail as usual, for they would come to him anyhow, and that he would pass the invoices as fast as he could; that the salesman said he would report this to the plaintiffs, and afterwards said that he had done so, and they approved of this proposal; that all these goods were sent under that arrangement; that the invoices when received by him were kept from the members of the firm, and others who by the usual course of business would have known about them; that the statements of accounts sent by the plaintiffs in August and December, 1884, were for goods ordered by assistants of the superintendent, and sent in the usual course; that only one other statement was received by the book-keeper, who found that it was for goods which did not appear on the books, and sent it to the superintendent for explanation, who kept it, and reminded the salesman of the plaintiffs that it should not have been sent, and nothing further was done about it; that the plaintiffs called upon the superintendent to pass the invoices from time to time, and complained that they were delayed and getting old; and he requested them to send him some invoices of the goods without date,

which they did, and into some of which he put late dates, and passed them as correct, and procured the person who received goods bought to pass them by telling him they were all right, and sent them to the book-keeper to be paid, who paid them, and sent remittance sheets showing that they were paid as bills of a late date, which the plaintiffs received, but applied the payments to the charges of the amounts at the earlier dates when the goods were sent; that the goods as they were received were placed, by direction of the superintendent, among the other goods of the department for sale, and were sold, and the money received for them by the defendants, except to the amount of from three to five thousand dollars at cost prices, before this arrangement, or the fact that any goods not coming in the usual manner and appearing on the books of the defendants, was discovered; that goods from others to the amount, with these, of $252,000, were received into this department, on similar arrangements with the superintendent, and in like manner; that he marked down prices without entering them in a book kept for that purpose, and forced sales at the reduced prices, so that this management of the department resulted in great loss, but the goods received from the plaintiffs, and sold, brought as much on an average as they were charged at; that when the discovery was made all the goods remaining on hand which had come from the plaintiffs were laid out and examined by the superintendent and others, to ascertain whether any of them were goods that had not been paid for; that it could not be determined whether they were or not, and they were put back into the stock for sale, and were all sold or on hand there; that other goods sent by the plaintiffs after the discovery were refused and returned; that the defendant firm consisted at that time of four members; that their house was divided into 52 departments, and they had upward of 2,000 persons employed in conducting their business; that one of the firm, Marsh, and the person who had charge of receiving goods bought, had died before the trial.

The book-keeper who had charge of paying for goods testified to the course of business as stated; the superintendent, to the course of business and to the concealment of these transactions from the defendants, and how it was done; and two of his assistants testified to the disposition of these goods in the stock of the department, and to the marking down of goods and the results. The senior member of the firm testified that Marsh had charge of the wholesale department; that when there he and the other two members of the firm would go through this cloak and suit department, perhaps once a week, or every day, but did not examine the stock; that on every Saturday they had a statement furnished to them of the amount of stock on hand in each department, and of the amount at the corresponding time of the year before, and also every month a statement of the amount on hand then and at the corresponding time of the year before, and that they had no other knowledge on the subject; that the figures did not excite suspicion; that he was gone on a voyage round the world from the fore part of November, 1884, to about June 20, 1885, and that he had no information at any time of the receipt of any of these goods, or of the avails of them, until after the discovery;

that one of the other members of the firm was at the time of trial gone on a voyage round the world, and had been gone six months; and that he defended this suit because, in his opinion, the payment of the claims would involve a loss in that department. The testimony of the absent partner was not introduced, and the other one did not testify; and none other of the persons employed in the defendants' establishment testified in the case on the trial. The plaintiffs' evidence, in reply, tended to show that they could have determined whether the goods that remained after the discovery were of those paid for or not, if they had been called upon for that purpose; and that they were not so called upon.

The plaintiffs requested the court to charge the jury, in substance, among other things, that the burden of proof was on the defendants to establish the defense set up by them that the goods were sent upon this arrangement with the superintendent for concealment from them; that the jury would not be at liberty to find that the firm did not have knowledge of the goods sent during the absence of the senior partner, amounting to $23,386.66, upon his mere denial, without testimony from the other defendants; that if they, after the discovery, assumed ownership of any of the goods, such act would amount to a ratification sufficient to make them liable for all the goods, and especially for that part; and that the mailing of letters and other communications by the plaintiffs to them would be *prima facie* evidence that the letters and contents were received by them, in the absence of proof from each that they were not received.

The court directed the jury to return a verdict for the plaintiffs for the amount of one invoice of the goods received and retained after the discovery, amounting, with interest, to $117.77; and further charged the jury, in substance, that if the superintendent ordered these goods in the usual course, acting for the defendants, or gave the salesman to understand that he did, the plaintiffs were entitled to recover for the whole; that if he did not so order them, but lent himself in his position in the defendants' establishment to the plaintiffs for the purpose of getting their goods into the establishment of the defendants among the defendants' goods, without the knowledge and against the will of the defendants, and the plaintiffs or their salesman took advantage of the faithlessness of the superintendent to get the goods of the plaintiffs into the establishment of the defendants as if they were sold, against what they understood to be the will of the defendants, and without their knowledge, to be disposed of there as if bought, the arrangement, if carried out, would not amount to a sale of the goods so as to make the defendants liable for them as for goods sold; that the fact that the superintendent deceived the defendants was not important, unless the plaintiffs or their salesman concurred in the deceit, and acted upon it; that, if the goods were sent under the arrangement with the superintendent which the defendants' evidence tended to show, still, if these and other goods, sent by other persons under similar arrangements, came in such large quantities that, in view of all the circumstances, the defendants must have known that goods were being received as if bought beyond what were reported, and

their books showed, and they did not inquire where the goods came from, when in the exercise of due diligence they ought to have inquired, or did inquire and find out where they came from, and made no objections, but continued to let the goods come and be disposed of, and received the avails of them, the defendants would be liable for them as for goods bought, but that they were not to be held liable on this ground for not making inquiries which the plaintiffs or their agents intended that they should not make, and deceived them into omitting; that the fact that the senior partner was absent during a large portion of the time when the goods were being received was to be considered, with all the other evidence, as bearing upon the question whether the defendants must have known that more goods were being received than were reported; that in giving notice of protest of notes, and such cases, the fact that the notice was mailed to the person would be sufficient, but that when a party is to be affected with knowledge of what is in a letter the proof must go further, and show that it is received; that the fact that the plaintiffs mailed letters containing invoices and statements of accounts to the defendants would bear upon what the conduct of the plaintiffs was, and their good faith in this transaction, upon how they understood the matter, and were acting in regard to it, but would not in law establish the fact that the defendants received the letters and their contents, and would not be proof of that fact; that the fact that the defendants retained the goods, concerning which they could not determine whether they came from the plaintiffs or not, would not make them liable for any of the goods; and that the burden of proof was upon the plaintiffs to establish, by a fair balance of evidence, that the goods were ordered by the superintendent by virtue of his authority in the usual course, or that the defendants knew, or ought to have known, that these goods were being received from the plaintiffs, and permitted them to be received as if bought and disposed of; and that, if they failed to establish one or the other of these propositions, the verdict should be for the defendants as to these goods.

The plaintiffs excepted to these rulings as to the burden of proof; as to the goods received during the absence of the senior partner of the defendants' firm; as to the effect of retaining the goods and proceeds after the discovery; and as to the presumption of proof from the mailing of letters,—among other rulings. The jury returned a verdict for the defendants as to these goods, except those in the invoice, as to which a verdict for the plaintiffs was directed; and the plaintiffs rely upon these exceptions on this motion for a new trial.

The plaintiffs' declaration or complaint consists of one count merely, for goods sold and delivered. The defendants' plea or answer consists of the general issue or denial, and a statement of the facts which their evidence tended to show. If the statements in the answer are to be taken as true, until disproved, as it is understood they must be under this system of pleading, they do not, in connection with those in the complaint, make out a cause of action; neither did the proof of the facts which the defendants' evidence tended to show, in connection with the proof merely

that the goods were sent, and received and disposed of, without more, make out a cause of action. Those facts together did not show a sale and delivery of the goods, but showed that the plaintiffs attempted to make use of the defendants' establishment for the purpose of getting their goods into it, and disposed of there for money, and the money to the amount of the price of the goods returned to them, without the knowledge and against the will of the defendants. This would not show a sale and avoid it, but would show there was no sale. The plaintiffs had to show more if they could. They undertook to show an order from a duly-authorized agent, accepted by them. This made a case, if they could maintain it. The defendants did not deny the authority, but did deny the giving of the order. The latter was as essential to the plaintiffs' case as the former. They admit that, if the authority had been disputed, the burden of establishing its existence would rest upon them. There is, however, no difference as to burden between that and the other essential fact. The jury found that they had not sustained the burden in this respect, and that no order was given. Under the rulings, there was still left to them the chance to make out the sale, if they could, by showing that the defendants knowingly permitted the delivery of the goods, as if bought, to be continued, and kept and disposed of them as their own. This was not meeting an avoidance by the defendants of a sale of the goods to them, but was making out the sale itself. If the plaintiffs could not make out this part of their case, and the other part failed as it did, they had no case. A delivery of goods would not make a sale; and a delivery and acceptance would not, unless the acceptance was as of goods sold. The plaintiffs had to make out such an acceptance in order to sustain their allegation of a sale as to this part of their case. The court put the burden upon them of making out a sale in one way or the other. From time to time, during the trial, the preponderance of evidence on the issues shifted from side to side, so that, at those times, it might have been said that the burden of proof was shifted accordingly. But, when the evidence was all in, the question upon the whole was whether the plaintiffs had produced the fair balance of evidence necessary to make out the case which they undertook to make out. This question was left to the jury as to each aspect of the plaintiffs' case. To have required less would have left the plaintiffs a chance to recover without proving a right to recover. The authorities cited do not sustain, and the plaintiffs' counsel would not probably contend for, such a result. *Asher* v. *Bank*, 7 Alb. Law J. 43; *Caldwell* v. *Steam-Boat Co.*, 47 N. Y. 290; *People* v. *Thacher*, 7 Lans. 286, 55 N. Y. 535; *Dalrymple* v. *Hillenbrand*, 62 N. Y. 5; *Cowing* v. *Altman*, 71 N. Y. 435; *Nelson* v. *Woodruff*, 1 Black, 156; *Gay* v. *Parpart*, 106 U. S. 679, 1 Sup. Ct. Rep. 456.

These considerations afford something of a guide.for the disposition of the question made respecting the goods sent and received during the absence of the senior partner of the defendants. If it belonged to the defendants to show that the goods came, and were there and disposed of, without their knowledge, then there was no direct testimony that the

two partners who did not testify did not, during the time in question, notice the goods, and become affected with the duty to inquire into their source, and how they came there. This consideration would, however, apply to the rest of the time as well as to that. and to the deceased partner Marsh, as well as to them, except that the testimony showed that he had charge of the wholesale department, and impliedly not of this branch of the retail department. But as it rested upon the plaintiffs, as has been seen, to prove, by circumstances or otherwise, knowledge, and not on the defendants to prove want of knowledge, but only to meet the plaintiffs' proof of knowledge, it was not necessary for them to prove want of knowledge at this part of the time by any particular persons or witnesses. The only difference in circumstances between this and other parts of the time was that, during this time, the senior partner who testified did not have opportunity for such observation of the amount of goods and situation as he had when there. This circumstance was laid before the jury with the rest, and appears to have had the importance given to it that belonged to it.

The ruling in respect to the effect of mailing letters, as evidence of their receipt and knowledge of their contents, is connected with this part of the case. The defendants insisted at the trial, and insist now, that if the goods were not ordered in the usual course, but were sent under the arrangement which they claimed existed, there was no sale to ratify, and that knowledge of the receipt of the goods would not make them liable as for goods sold; and they insist now that the submission of their liability to the jury in that aspect was wrong, and that, if it was done upon any erroneous ruling in respect to evidence bearing upon it, the plaintiffs had a chance to recover which they were not entitled to, and cannot complain that it was not made still more favorable. It is true that, if the transaction was as the defendants claimed and as the jury must have found, there was no sale growing out of that, as the case and the law applicable to it is now considered; but the case was not submitted to the jury as to this ground of liability, upon any idea of a prior sale that might be good if ratified, and would not be good of itself. If nothing had ever occurred between the parties, or those acting for them, before the goods were sent, and they were sent as if the plaintiffs understood they were sold, and received by the defendants, and retained with knowledge that they were so sent, the sending would be an offer of sale, and the receiving an acceptance which would constitute a sale, at a known price, if there was one, and at a reasonable price if there was no other. In this case the invoices and statements, if sent and received, gave the price. It appeared at the trial, and appears now, that the plaintiffs were entitled to have the case submitted to the jury upon this aspect of the law. If so, they were entitled to have it submitted upon correct views as to the effect of the evidence. The defendants claimed then, and insist now, that the ruling as to the effect of mailing letters was correct. It was important to the plaintiffs that it should be; for, if the jury could find that the defendants received the statements of accounts and invoices, that would go far towards finding knowledge that the

goods were sent.   The ruling was made upon the supposition that the only presumption arising from the fact of mailing was that officers and persons engaged in transmitting the mail would do their duty.   As was said by DEWEY, J., in *Bank* v. *Crafts*, 4 Allen, 447:

"In reference to the duty devolving upon the holders of commercial paper to give notice to indorsers, it has, for the purpose of facilitating the transmission of notices of that character, long been held that the putting a letter into the post-office is not only good *prima facie* evidence, but sufficient proof to establish the fact of giving notice.   The receipt of such notice is not open to be controlled.   But we do not understand that in other cases, where notice is required by the terms of the contract or force of a statute, the putting of a letter into the post-office is presumptive evidence of the fact of the receipt of such notice."

It appears, however, from an examination of the authorities cited in behalf of the plaintiffs, that there is the further presumption, arising from the usual course of business, as to getting or receiving letters from the mail by those to whom they are addressed.   *Austin* v. *Hollad*, 69 N. Y. 571; *Huntley* v. *Whittier*, 105 Mass. 391; *Rosenthal* v. *Walker*, 111 U. S. 185, 4 Sup. Ct. Rep. 382; Best, Ev. § 403.   If correct apprehension by the court of all principles of law involved is necessary to the correctness of a trial, there probably was error in this ruling; but correct instructions applicable to the case as presented, and that the court should not be wrong to the extent of misleading the jury, are all that seem to be requisite.   *Schools* v. *Risley*, 10 Wall. 91; *Evanston* v. *Gunn*, 99 U. S. 660.

In *Huntley* v. *Whittier* the defendant requested the court to instruct the jury that mailing the letter in question was not sufficient notice, unless they were satisfied that the defendant received it.   This request was complied with; but the court added that the mailing of the letter would be *prima facie* evidence that it reached its destination.   This instruction was approved, and Mr. Justice GRAY, then chief justice of the supreme court of Massachusetts, in delivering the opinion of the court, said that the presumption arising was "a mere inference of fact founded on the probability that the officers of the government will do their duty, and the usual course of business."   This statement of the foundation of the presumption is quoted with approval by Mr. Justice WOODS, in the opinion of the court in *Rosenthal* v. *Walker*.

The evidence in this case does not show that the free-delivery system of the post-office department prevailed in Boston at that time; but perhaps judicial notice should be taken of the size of that city, and of the fact that it was such that the law required free-delivery there, and of the existence of the delivery there.   1 Greenl. Ev. § 6; Rev. St. U. S. § 3865.   If so, the letters would be delivered by the government carriers at the place of business of the firm, and not at the residences of the members of the firm.   If not so, the presumption from the usual course of business that the firm would get letters addressed to it would be that it would get them to its place of business, and not that the members would get them at their residences.   That place would be the destination of the letters in either event.   If the question was whether the letters got there only, the

request of the plaintiffs would have been well founded, and the ruling clearly erroneous and misleading. But the question was whether the letters and their contents got to the members of the firm, who could control the superintendent, and not whether they got to the establishment. The invoices were, by the arrangement found, to go to the superintendent, and by the undisputed evidence they did go to him.

The only question left, upon the evidence, to which the presumption could be applied, was whether the statements of account which the plaintiffs' evidence tended to show were sent, and the defendants' book-keeper testified were not received, were received, and went to the defendants in person. If they were received at the establishment, the same course of business that would send them to the book-keeper would have sent them again to the superintendent for explanation, where the other one relating to goods not on the books was sent, and where all letters relating to goods bought were to be sent. There was no dispute about the fact of this course of business. The presumption arising from it as an inference of fact, as defined by Chief Justice GRAY, would not, as applied to the course of the mail in arriving at and being disposed of in this establishment, have carried the letters to the defendants in person, but away from them to the superintendent. The extent of the presumption must necessarily be controllable by the circumstances of the actual course of business when shown.

In *Groton* v. *Lancaster*, 16 Mass. 110, it was held that proof of sending a notice from the overseers of the poor of one town by mail, directed to those of another town, was not sufficient to show that it was received by the latter. The ruling contended for by the plaintiffs would have left the jury to find that the defendants themselves received the letters not only beyond, but contrary to, the presumption arising from the course of business shown in this case, while the ruling made, so far as applicable, merely confined them to it. However erroneous the supposition of the court as to the law on the subject of this ruling may have been, no misdirection of the jury which would mislead them in this case is made to appear.

The question made upon the ruling, as to the effect of what was done by the defendants with the goods found in their establishment that came from the plaintiffs, relates to the liability of the defendants in this action for all the goods sought to be recovered for, as well as for any of those goods in particular. Goods had been bought of the plaintiffs in the usual course, before any of those in question were sent, and also in August and December, 1884. The superintendent had passed bills, and procured money to be sent to them, in June, 1885, for some of those first sent under this arrangement; and those of the invoice of July 30, 1885, had been lately received. All of these, except the latter, had been paid for. The proportion of all of them to the whole quantity that came from the plaintiffs is so small that it might fairly be presumed that at least a considerable portion of those left were of the goods in question. The defendants' evidence that they could not ascertain whether any of them were goods not paid for must therefore be taken to mean that they could

not t,ell whether any particular cloaks or suits were not paid for, of those that were then there.   Such of those as were there had not come there by any act of the defendants, or of any one authorized to act for them in getting goods there in that manner.   They had not been sold to the defendants, but had been got there among the goods of the defendants' establishment by the procurement of the plaintiffs, and were situated as if the plaintiffs had personally taken them there, and left them, without the knowledge of any one connected with that establishment.   The plaintiffs had, according to the finding of the jury on the other parts of the case, in undertaking to impose the disposition of their goods upon the defendants, so mingled them with the goods of the defendants that the defendants could not tell which were the plaintiffs'.   The defendants could not return to the plaintiffs what belonged to them without sending the whole, which would include their own.   The defendants knew that the plaintiffs claimed that all were sold to the defendants; the plaintiffs knew that the defendants claimed that they had not bought those in question.   That the defendants knew that the plaintiffs could select those not paid for does not appear.   By the civil law, if goods so mingled are retained by either owner, the other is left to his action for his share to be estimated.   Just. lib. 2, tit. 1, § 28; Bract. bk. 2, c. 3. By the common law, if the goods cannot in fact be distinguished, and the intermingling was willful, with intent to defraud, the whole goes to the one whose property was invaded, and the other loses his right.   2 Bl. Comm. 405; Bac. Abr. "Trespass," E; Lord ELLENBOROUGH, C. J., in *Mayor, etc.,* v. *Wilson,* 5 East, 2, at page 7; 2 Kent, Comm. 364; *The Idaho,* 93 U. S. 575.

The question here, however, is not whether the plaintiffs lost their property in these goods by reason of their conduct, but whether the defendants became liable for these goods, as for goods sold to them by reason of theirs.   But if the plaintiffs lost their right of property in the goods, the liability of the defendants to them would not be enhanced by anything which they did about the goods.   The intermingling may not have been so willful and fraudulent as to affect the right of property. *Ryder* v. *Hathaway,* 21 Pick. 298; *Pratt* v. *Bryant,* 20 Vt. 333.   If not, the plaintiffs could maintain no action for its detention without a demand for theirs.   *Bond* v. *Ward,* 7 Mass. 127; *Sawyer* v. *Merrill,* 6 Pick. 477; *Shumway* v. *Rutter,* 8 Pick. 443.

The defendants owed to the plaintiffs no duty about the goods.   The most they could do would be to request the plaintiffs to select their own, and take them away.   They did not know that the plaintiffs could do that, so far as shown; and the claim of the plaintiffs that the goods were sold, and belonged to the defendants, would naturally lead them to suppose that the request would be unavailing if made.   They are not estopped from denying a sale by any misleading of the plaintiffs by their course in this respect.   At the time they were doing what they did about these goods, they were doing nothing about the others which the plaintiff claimed to have sold, and were expressly repudiating to the plaintiffs any liability for them as for goods sold.   There was no attempted sale

to ratify; and the defendants had nothing to meet but the plaintiffs' claim that there was a sale, which has by the verdict been settled, for the purposes of this motion, to be unfounded. The defendants did not yield to that claim, as in the case of the invoice of July 30, 1885, and thereby make themselves liable, but repudiated it always, and so far with success.

The plaintiffs have not on this motion relied upon the sale of the goods and receipt of the avails prior to the discovery as bearing upon the liability of the defendants for those goods as for goods sold and delivered. This is not alluded to for the purpose of showing that anything has been waived or omitted on the part of the plaintiffs, but for the purpose of showing that it was not overlooked by counsel or court. In considering this point, it must be taken to be settled that those goods were sold, and the money for them received, by the defendants by the procurement of the plaintiffs, and without knowledge of the defendants, on their part, that the goods of the plaintiffs were being sold, or that money was being received for them. They, and all acting for them in those transactions, supposed that their own goods were being sold, and that all money received was theirs. Their superintendent was acting in these transactions for the plaintiffs, and not for them. The money was in the defendants' hands as if the plaintiffs, as before supposed, had put their goods into the defendants' establishment among the goods, without the knowledge of any one connected with it, intending that they should be sold, and the money received for them, and all had been so done. The plaintiffs may not have lost their right to the money, but it was not in the defendants' hands through any fault of theirs. They were under no obligation to do anything about it until called upon for it. An action could not be maintained for it until after a demand for it. 2 Greenl. Ev. § 120; *Bank* v. *Bank*, 40 Vt. 377; *Saville* v. *Welch*, 58 Vt. 683, 5 Atl. Rep. 491. The only thing which the defendants could do with the money was to keep it or send it to the plaintiffs. As they were not bound to do the latter, the omission to do it could not justly be claimed to affect their liability. Every advantage from this fact was claimed for the plaintiffs on the trial, and the questions arising on these claims were disposed of according to these views.

The defendants knew when they retained these goods after the discovery, and sold them or put them into their stock again for sale, that the plaintiffs claimed that they were sold; but they did not know how many of them the plaintiffs claimed they were still liable for, nor at what price. These goods were situated differently, in this respect, from those sent accompanied by a statement of account for them. The plaintiffs could not claim that they became liable for these goods at any price, or for any amount, for there was nothing to show any price nor any amount; nor that the defendants were liable for what those not paid for were reasonably worth, for there was no evidence as to how many there were of those particular goods not paid for, or what they were worth.

In *Pratt* v. *Bryant*, 20 Vt. 333, the plaintiff sought to recover the price of some wood which he supposed he had sold to the defendant, and

which he delivered, and it became mingled with other wood of the defendant, so he could not separate it, and which the defendant had not bought, and told the plaintiff he could take away, but to be careful and not take any other of the defendant's wood. The plaintiff did not take away any, because he could not tell which his was, and the defendant used the whole. The court held that he could not recover the price as for wood sold, but could only recover in trover, or, by waiving the tort, in *assumpsit* for the money, if any had been received; and the judgment for the plaintiff for the price was reversed, and judgment rendered for the defendant. That was a stronger case for the plaintiff than this; for there the plaintiff supposed he had sold the wood, while here, on the finding of the jury, the plaintiffs must have known there was no sale.

On the whole case, as presented, understood, and considered with reference to these points made on this motion, it is not made to appear but that the plaintiffs had a fair chance before the jury to obtain a verdict, if they could, for these goods, as if sold and delivered. That they failed is only attributable to the weakness of their case, and the strength of the defendants' case, on the questions involved in that aspect. Whether they have rights to be relieved by other remedies is not now in question.

Motion for new trial overruled, stay of proceedings vacated, and judgment on the verdict ordered.