[S. F. Nos. 6709, 6879. Department One.—June 7, 1916.]

# G. WATSON FRENCH, Respondent, v. LLOYD M. ROBBINS et al., Appellants; JAMES ALVA WATT, Cross-complainant and Respondent; HENRY C. STILWELL et al., Defendants.

ASSUMPSIT—NATURE OF—DEFINITE SUM MUST BE SHOWN.—The foundation of the action of *assumpsit*, where property of plaintiff has been wrongfully taken and sold by the defendant, is the unjust enrichment of the wrongdoer; and in order to recover in such an action, the plaintiff must show that a definite sum, to which he is justly entitled, has been received by the defendant. As the amount of the plaintiff's recovery is limited to the proceeds received by the defendant, it is fatal to this form of action that the amount is not ascertainable.

ID.—ACTION FOR MONEY HAD AND RECEIVED—SALE OF STOCK AND NOTE—INABILITY TO DETERMINE PRICE OF EACH. — In an action, which plaintiff claims is in reality one upon an implied or *quasi* contract, in which plaintiff waived the tort committed by the wrongful sale of his property and sued in *assumpsit* for the proceeds of such sale, where the property sold consisted of certain corporation stock together with a promissory note, and it is found that the stock and note together sold for a certain lump sum, but there are no means of determining what portion of the purchase price was paid for the stock and what for the note, a judgment in favor of a cross-complainant, who had a lien on the note but no interest in the stock, for the amount of his claim, and in favor of the plaintiff, who had a lien on the stock but no interest in the note, for the balance of the proceeds of the sale, is erroneous, in that it is not shown separately what amount was received by defendants on the sale for each of the specific properties in which the plaintiff and cross-complainant separately claimed a lien.

ID.—PROCEEDS OF SALE—DIFFERENT INTERESTS IN—FAILURE TO DETERMINE AMOUNT OF.—In such a case the objection to the judgment is not met by the contention that the plaintiff and cross-complainant were together entitled to the entire proceeds of the sale of the three items of property, and that, as they are not questioning the manner in which such proceeds were apportioned between them, the appellants are in no position to complain, where it appears that a bank had a lien on the note superior to that of the cross-complainant, and further, that the cross-complainant was not the owner of the note but merely had a lien on it, and plaintiff had no interest at all in the proceeds of the note.

Id.—DOCTRINE OF CONFUSION OF GOODS—INAPPLICABILITY OF.—The doc-
trine of "confusion of goods," i. e., the rule which, under some
circumstances, forfeits the right of a defendant in goods which
he has wrongfully intermingled with those of the plaintiff, in such
wise that the separate interests cannot be ascertained or distin-
guished, has no application to such a case, as the shares of stock
and note were not of like character, but were always capable of
being distinguished, and the only confusion was in the proceeds of
the sale, and not in a mixture of the goods themselves.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco, and from an order deny-
ing a new trial. Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Richard Bayne, Pillsbury, Madison & Sutro, and A. D.
Plaw, for Appellants, International Banking Corporation
and William H. High.

Archibald Bernard, and Horace W. Philbrook, for Appel-
lant, Lloyd M. Robbins.

James Alva Watt, in pro. per., for Respondent, James Alva
Watt.

McCutchen, Olney & Willard, and Samuel Knight, for
Respondent, G. Watson French.

SLOSS, J.—The trial of this action resulted in a judg-
ment that plaintiff French recover from the defendants
High, Robbins, and International Banking Corporation the
sum of $15,295, with interest thereon from April 4, 1907,
and that defendant and cross-complainant Watt recover
from said defendants High, Robbins, and International
Banking Corporation the sum of five thousand dollars, with
like interest. Various appeals have been taken and are
presented in two records, transcripts having been filed in
this court under the numbers, respectively, of S. F. No. 6709
and S. F. No. 6879. The defendants High and Interna-
tional Banking Corporation appeal from the judgment alone.
Robbins appeals not only from the judgment, but from an
order denying his motion for a new trial. The record in
No. 6709, upon which alone the appellants High and Inter-

national Banking Corporation rely, includes a reporter's transcript of the testimony, prepared and certified under section 953a of the Code of Civil Procedure. The appellant Robbins has brought up, in addition, a bill of exceptions settled upon his motion for a new trial. All of the appeals are closely related and will be considered in one opinion.

The general character of the controversy will appear from the following summary of the findings made by the court below: International Banking Corporation, designated as the defendant bank, was a corporation having a place of business in the city and county of San Francisco. High was the manager of the defendant bank. Robbins was an attorney at law and the attorney for the defendant bank and High. From and after April 13, 1906, Robbins was also, as the court finds, the attorney and trustee for plaintiff, a fact known to the defendant bank and High. Prior to September 1, 1905, the defendant Stilwell was indebted to the bank, and had executed and delivered to it an agreement pledging, as security for existing or future indebtedness, a certain promissory note made by the American Magnesite Company to Stilwell for eighty-nine thousand dollars, and any other collateral and securities that might thereafter be deposited, and authorizing the bank to sell such note and securities without notice and at private sale for the repayment of said indebtedness. On or about September 5, 1905, Stilwell gave to Robbins an order on the defendant bank for payment of the sum of seven thousand five hundred dollars, and directed the bank to hold as security therefor all securities belonging to him (Stilwell) then in the possession of the bank. Said order was indorsed by Robbins and by him delivered to the bank. The only security belonging to Stilwell then held by the bank was the promissory note of the American Magnesite Company for eighty-nine thousand dollars.

Plaintiff and Stilwell were both stockholders in said magnesite company. On January 27, 1906, they and other stockholders entered into an agreement to loan said magnesite company one hundred and twenty five thousand dollars, of which plaintiff was to furnish twenty thousand dollars, and Stilwell twenty-five thousand dollars. A part of the agreement was that Stilwell was to have the defendant bank surrender the eighty-nine thousand dollar note and accept

in place of it a new note of the magnesite company for forty-three thousand dollars. On the last-named day the defendant Stilwell agreed with plaintiff that if plaintiff would advance twenty-five thousand dollars to the magnesite company for him, Stilwell, he would secure the repayment of said loan, and he did assign to plaintiff all of the capital stock of Stilwell Coal Company, a corporation. The stock of said Stilwell Coal Company, all of which belonged to Stilwell, had prior thereto been pledged and deposited with the defendant bank. Thereafter, Stilwell borrowed from the bank a further sum of two thousand dollars, and deposited as security therefor under the collateral agreement above referred to all of the capital stock of the Paso Robles Water Company, a corporation which owned the waterworks of Paso Robles. In the month of February, 1906, Stilwell and one Miller owned an electric light plant at Paso Robles. Stilwell acquired the Miller interest, and formed a new corporation, the Paso Robles Light and Water Company, to which the property of the Paso Robles Water Company and the electric light plant was transferred. Stilwell was to receive, and did receive, three-fourths of the stock of this new corporation in exchange for the stock of the water company, and the remaining one-fourth was to be held by Miller as security for a payment due him. On April 13, 1906, the defendant bank held in its possession all of the shares of the capital stock of the Paso Robles Water Company and the Stilwell Coal Company. On that date, in consideration of the advance by plaintiff to the magnesite company for defendant Stilwell of twenty-five thousand dollars, Stilwell and Miller executed to the defendant bank three writings, which the latter accepted and agreed to. The one authorized the bank to deliver seventy-five per cent of the capital stock of the Paso Robles Water Company to Robbins as trustee for French, "upon the payment of a promissory note executed by H. C. Stilwell for two thousand dollars." This paper was signed by Stilwell and Miller. The second, signed by Stilwell, authorized the bank to deliver to Robbins as trustee for French the shares of stock of the Stilwell Coal Company held by it. The third, signed by Miller, authorized the bank to release the stock of the Stilwell Coal Company from any claims that he might have against it. At the same time, it is found, the

parties agreed that payment of the sum of two thousand dollars mentioned in the first of these instruments should not precede the delivery of the shares of stock, but might be made at a later time; and all of the shares of stock referred to in said writings, i. e., the shares of the Paso Robles Water Company (afterward exchanged for the shares of the Paso Robles Light and Water Company) and all of the shares of the Stilwell Coal Company, were transferred and delivered to Robbins as trustee for plaintiff, and were thereby released from any lien or claim of lien thereon of the defendant bank or Miller. Robbins thereafter, with the knowledge and consent of the bank, High, and Stilwell, surrendered the stock of the water company and received all of the capital stock of the Paso Robles Light and Water Company. The stock of said company was issued in his name, as was the stock of the Stilwell Coal Company, all of said shares, however, being held by Robbins as trustee and attorney for plaintiff. In July, 1906, the magnesite company made and delivered to Stilwell its note for forty-three thousand dollars, payable in installments, and the same was indorsed by Stilwell and delivered to the bank, which thereupon surrendered the eighty-nine thousand dollar note. The plaintiff paid to the magnesite company the twenty-five thousand dollars agreed to be advanced by him for Stilwell.

On January 11, 1907, Stilwell was indebted to the defendant Watt in the sum of five thousand dollars for legal services and had also agreed to deliver him two bonds of the magnesite company. Watt was pressing for a settlement and threatening legal proceedings. On said January 11th, Robbins, in order to induce Watt to forego proceedings, represented to him that there were no liens or claims on the forty-three thousand dollar note other than that of the bank, and Robbins and Watt and Stilwell agreed to a settlement whereby Stilwell gave Watt an order on the defendant bank reading as follows:

"Please pay to James Alva Watt, or order, the sum of five thousand dollars, and hold as security for the same balance due me on a certain promissory note of the American Magnesite Company for $43,000.00

"(Signed)   H. C. STILWELL."

This order was indorsed by Watt and delivered by him to defendant High, as manager of the defendant bank, and the

same was accepted by High as such manager, "for collection according to its terms." It is found that by said order Stilwell pledged to Watt the said forty-three thousand dollar note, subject to the prior lien of the defendant bank, and the bank accepted said order as pledge-holder of the said note after the payment of the sums due to it from Stilwell, and that Watt never waived any of his rights as pledgee. At the same time, it was agreed between Robbins and Watt, and their agreement was accepted and agreed to by High and the bank, that any sums paid on the forty-three thousand dollar note by the maker, over and above the amount secured to be paid thereby to the defendant bank, should be apportioned and paid to Watt and Robbins in the proportions of two-fifths to Watt and three-fifths to Robbins. In accepting the said order from Watt, the bank and High agreed to notify Watt of any acts or things thereafter affecting his security.

On January 15, 1907, the magnesite company defaulted in the payment of an installment of principal and interest due on the forty-three thousand dollar note. On April 15, 1907, it again made default and advised the bank that it had no funds with which to meet said payments. No further payments of principal or interest were thereafter made.

The findings go on to state that plaintiff had given Robbins a general power of attorney, and employed him as his attorney at law in connection with the plaintiff's interest in the capital stock of the Paso Robles Water Company, the Paso Robles Light and Water Company, and the Stilwell Coal Company. He had furnished Robbins with a bank credit of five thousand dollars, and directed him to draw against the sum whenever necessary to pay the sum of two thousand dollars above referred to, and for protecting plaintiff's interests.

On March 31, 1907, the defendant bank, through its manager High, demanded of Robbins the return of the capital stock of the Stilwell Coal Company or payment of said sum of two thousand dollars. The plaintiff was then absent from San Francisco, and Robbins, without advising or notifying plaintiff and without drawing upon the funds which were at his disposition, and without any direction so to do, delivered to High and the defendant bank certificates representing the entire capital stock of the Stilwell Coal Company and of the Paso Robles Light and Water Company. Thereupon, with-

out plaintiff's knowledge or consent, the defendants High and the bank, with the knowledge and consent of Robbins, on the fourth day of April, 1907, without notice to plaintiff or to Watt or Stilwell, sold as a whole all of the securities hereinbefore mentioned, namely, the forty-three thousand dollar note of the magnesite company, the stock of the Stilwell Coal Company, and the stock of the Paso Robles Light and Water Company, together with one bond of the magnesite company, to one A. B. Bowers for the sum of $20,295.

The purchase price was paid by Bowers with his two promissory notes, one for $12,795 payable to the defendant bank, and the other for seven thousand five hundred dollars payable to Robbins. The last-mentioned note was indorsed by Robbins and delivered to defendant High and the bank. Robbins then owed the bank more than seven thousand five hundred dollars. Bowers thereafter paid the $12,795 note to the bank in full and at the same time paid said bank the sum of six thousand five hundred dollars in full payment and satisfaction of the seven thousand five hundred dollar note. This sum of six thousand five hundred dollars was applied by the bank in partial payment of the indebtedness of Robbins to it. Plaintiff had no notice of this sale until long after it had been made, and never consented thereto. Watt had no notice of the intention of the defendants Robbins, High, or the bank to sell the forty-three thousand dollar note, or of any of the acts done in connection therewith, until after the sale was fully consummated and the purchase price paid. He never consented thereto. It is found that the defendant Stilwell was, at the date of said sale, insolvent, and ever since has been, and that no part of the twenty-five thousand dollars advanced by plaintiff has ever been paid. Likewise, that no part of the five thousand dollars due to Watt has been paid. It is found that on April 4, 1907, the time of the sale of said securities, the plaintiff was entitled to possession as pledgee of all the capital stock of the Stilwell Coal Company and of three-fourths of the capital stock of the Paso Robles Light and Water Company as security for the payment to him from defendant Stilwell of the said sum of twenty-five thousand dollars; that on said date defendants Robbins, High, and the bank wrongfully converted the said stocks and all thereof to their own use, and that on said date the said coal and light and water stocks and said forty-three

thousand dollar magnesite company note were of the value of $20,295. The court found that on said April 4, 1907, Watt was, as High, Robbins, and the bank well knew, the pledgee of the note of the magnesite company as security for the sum of five thousand dollars, and the defendant bank was the pledge-holder of the said note as security for Watt, subject to the defendant bank's prior lien, and that on said fourth day of April the defendants Robbins, High, and the bank wrongfully converted to their own use the said promissory note and the whole thereof. The conclusions of law were that plaintiff and the defendant Watt were entitled to judgment against High, Robbins, and the bank for the sums of $15,295 and five thousand dollars, respectively, with interest and costs. As above stated, judgment was entered accordingly.

The appellant Robbins attacks many of the foregoing findings as unsupported. The appellants High and the bank question the sufficiency of the evidence to support the findings to the effect that Stilwell pledged the magnesite note to Watt and that the bank became pledge-holder for Watt. And, in so far as the findings relative to the relation between Watt and the bank partake of the character of conclusions of law, all of the appellants make vigorous assault upon the trial court's view of the legal consequences resulting from the transactions between Watt, Robbins, Stilwell, and High. Certain rulings on the admission of evidence are questioned. But we do not find it necessary to go into any of these matters, as we are satisfied that the judgment cannot be supported upon the findings themselves, giving to those findings in every respect the interpretation demanded by the respondents.

Reducing to their essentials the somewhat complicated transactions covered by the findings, and assuming those findings to be fully supported, we find this to be the state of facts: Stilwell owed the bank $12,795. As security for this debt, the bank held the note of the magnesite company for forty-three thousand dollars. Stilwell owed Watt five thousand dollars, secured by a lien on the forty-three thousand dollar note. Watt's lien was, however, subject to the prior claim of the bank. The bank held the note in pledge for its own claim and as pledge-holder for Watt's claim.

Stilwell also owed the plaintiff French twenty-five thousand dollars. This debt was secured by the stock of the Stilwell Coal Company and three-fourths of the stock of the Paso Robles Light and Water Company, all of which had been transferred to Robbins in trust for plaintiff. Robbins wrongfully turned the coal stock and the light and water stock over to the bank, and High and the bank wrongfully sold, for a single lump price of $20,295, the three items of property, (1 and 2), the coal stock and the light and water stock, on which plaintiff had a lien (but Watt had none), and (3) the magnesite note, on which Watt had a lien (but plaintiff had none). There is no finding of the separate value of any of these three items of property. The sole finding is that the three together were of the value of $20,295.

The findings declare that on the day of the sale the bank, High, and Robbins converted to their own use the shares of stock and the note. Treating the action presented by the complaint of French and that embodied in the cross-complaint of Watt as suits for the conversion of personal property, the appellants contend that the judgment cannot stand for want of a sufficient finding of damage to the respective complainants. In other words, French, seeking relief for the conversion of his stock in the coal company and the water and light company, must, as a basis for the recovery of damages, show the value of the property converted. (Civ. Code, sec. 3336.) Similarly, Watt, claiming that his interest in the magnesite note had been converted, can recover damages for such conversion only upon proof of the value of the interest thus converted. No part of the property was owned in common by French and Watt. Their interests were several and went to distinct items of property. A finding of the combined value of the three items does not show either the value of the property in which French was interested, nor that of the property in which Watt claimed an interest. The judgment in favor of French for $15,295, and in favor of Watt for five thousand dollars, is, therefore, not supported by the findings.

The correctness of this conclusion, if the action was one to recover damages for the conversion of personal property, is obvious. It is, indeed, not disputed by counsel for French. They contend, however, that the action is in reality one upon an implied or *quasi* contract, in which the plaintiff waived

the tort committed by the wrongful sale of his property and sued in *assumpsit* for the proceeds of such sale. "If the defendant has converted the plaintiff's property, and in the act of conversion, or thereafter, sells the same, the plaintiff may, unless the question of title to land is involved in the controversy, waive the tort and sue in *assumpsit,* using the count for money had and received to recover the proceeds of the sale." (Keener on Quasi Contracts, p. 170.) We need not go into an analysis of the pleadings to determine whether the complaint of French (or the cross-complaint of Watt) was so framed as to present a case under this theory. Granting that the case is of the character contended for by the respondents, they are still confronted by a difficulty very similar to that which would stand as an obstacle to the sustaining of the judgment, if the action were viewed as one for the recovery of damages for conversion.

The foundation of the action of *assumpsit,* where property of the plaintiff has been wrongfully taken and sold by the defendant, is the unjust enrichment of the wrongdoer. (Keener on Quasi Contracts, p. 160.) It is well settled that, in order to recover in such an action, the plaintiff must show that a definite sum, to which he is justly entitled, has been received by the defendant. "As the amount of the plaintiff's recovery is limited to the proceeds received by the defendant, it will be fatal to this form of action that the amount is not ascertainable." (Keener on Quasi Contracts, p. 173; *Robson* v. *Andrade,* 2 Chit. 263; *Harvey* v. *Archbold,* 3 Barn. & C. 626; *Douglas* v. *Skinner,* 44 Conn. 338.) In *Saville* v. *Welch,* 58 Vt. 683, [5 Atl. 491], a chest of tea belonging to plaintiff, together with other goods in which plaintiff had no interest, had been sold by the defendant for a lump sum. It was held that an action for money received could not be maintained, because it did not appear what portion of the money was received for the plaintiff's tea, and that the only remedy was trover for the conversion. Similarly, in *Glasscock* v. *Hazell,* 109 N. C. 145, [13 S. E. 789], the defendant, who had converted plaintiff's mill-wheel, sold the wheel together with his own mill for a lump sum. It was held that the plaintiff could not "recover upon the implied contract—that is, for money had and received—as there was no testimony to show the amount

obtained for the wheel by the defendant.'' (See, also, *Rand v. Nesmith*, 61 Me. 111.)

The principle of these authorities is directly in point here. The plaintiff French cannot, under the findings, support a judgment for money received by the appellants on the sale of the shares of stock, since it does not appear that any specific sum was received for such shares. They were sold, together with the note, for a lump sum of $20,295, and there is no suggestion of any means for determining what portion of this purchase price was paid for the shares of stock. The same consideration applies to the judgment in favor of Watt. He has not shown that five thousand dollars, or any other specific sum, was obtained on the sale of his interest in the magnesite note.

The respondents attempt to meet this objection by arguing that the plaintiff and Watt were together entitled to the entire proceeds of the sale of the three items of property, and that, as they are not questioning the manner in which such proceeds were apportioned between them, the appellants are in no position to complain. But this argument rests upon the false assumption that French and Watt were entitled to the entire proceeds of the sale. Watt had, if his theory of the effect of his transactions be accepted, at most a lien on the note subordinate to that of the bank. The bank had a right to satisfy its own claim of $12,795 out of the proceeds of the note, before anything became due to Watt. His right began only when a sum in excess of this had been realized. The judgment, therefore, cannot be supported upon the theory that the entire purchase price of $20,295 was, in equity, to be distributed between French and Watt. But, even if the bank's prior lien on the note be disregarded, the position of the respondents is not bettered. Watt was not the owner of the note. He claimed merely a lien to the extent of five thousand dollars. He was not entitled to any of the proceeds in excess of this sum, and French, as the findings declare, had no interest at all in the proceeds of the note. The division of the entire purchase price of the lump sale between the two respondents can be supported only upon the theory that the note brought no more than five thousand dollars, and that the shares of stock brought $15,295. If the note brought more than five thousand dollars, the shares brought less than the amount awarded to the plaintiff French. To support the

judgment for money had and received, it was incumbent upon the respondents to show that the properties in which they were respectively interested realized the precise sums for which judgment was awarded them. This they did not do.

The respondent French seeks to support the judgment by reference to the doctrine of "confusion of goods," i. e., the rule which, under some circumstances, forfeits the right of a defendant in goods which he has wrongfully intermingled with those of the plaintiff, in such wise that the separate interests cannot be ascertained or distinguished. (*The Idaho,* 93 U. S. 575, [23 L. Ed. 978].) But the principle is not applicable to a case like the one before us. The shares of stock and the note were not of like character. They were always capable of being distinguished. The only "confusion" was in the proceeds of the sale, not in a mixture of the goods themselves. To allow the plaintiff, in an action for money had and received, to recover the proceeds, not only of his own goods, but of others in which he had no interest, would be inconsistent with the fundamental basis upon which this form of action rests, and in direct conflict with the authorities (*Saville* v. *Welch,* 58 Vt. 683, [5 Atl. 491], and other cases) hereinabove cited.

The foregoing considerations require a reversal of the judgment and a remanding of the case for a new trial. The reversal of the judgment removes any occasion to consider separately the appeal from the order denying the motion of defendant Robbins for a new trial. We do not, of course, intimate any opinion regarding the merits of the many points argued in addition to those above discussed. Some of these depend upon evidence or findings of facts in addition to those mentioned in this opinion. The omission of any reference to these facts is not to be taken as expressing the view that they are not important.

The judgment and the order denying a new trial are reversed.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.