[No. 15838.   Department Two.—April 4, 1895.]

## T. J. HORGAN, RESPONDENT, v. E. ZANETTA, AP-
PELLANT.

CHATTEL MORTGAGE — GROWING CROP — EXTINGUISHMENT OF LIEN — RE-
MOVAL FROM LAND.—The lien of a chattel morgage on a growing crop
continues only as long as the same remains on the land of the mort-
gagor; and is *prima facie* extinguished when the crop is removed from
the land.

ID.—REMOVAL TO LAND OF CREDITOR—ATTACHMENT—ESTOPPEL.—The fact
that a creditor of the mortgagor who attached the crop after removal
thereof from the land of the mortgagor to his land represented that
the land of the mortgagor was not suited to the placing of a machine for
the threshing of the crop, and requested him to take the grain on to
his land as more adapted to the threshing of it, the creditor not at the
time knowing of the existence of the mortgage, does not estop the cred-
itor from attaching the grain after its removal from the land of the
mortgagor to his land, notwithstanding the existence of the mortgage
was known prior to the levy of attachment, it appearing that the mort-
gagee did not use any care and diligence in looking after the crop when
harvested, or pay any attention to the grain until it had been attached
nearly a month subsequently to its removal from the land of the mort-
gagor.

APPEAL from a judgment of the Superior Court of
San Benito County and from an order denying a new
trial.

The facts are stated in the opinion of the court.

*N. C. Briggs, John L. Hudner, S. F. Geil,* and *John
J. Wyatt,* for Appellant.

Plaintiff's mortgage lien was lost when the mort-
gagor removed the grain from the land which he had
leased.   The lien of a mortgage on a growing crop con-
tinues on the crop after severance, whether remaining
in its original state or converted into another product,
so long as the same remains on the land of the mort-
gagor.   (Civ. Code, sec. 2972.)   This section of the
Civil Code was adopted in 1878, and took effect from its
approval.   Prior to that time the lien of the mortgage
only continued until the crop was severed from the
land, and then ceased, unless the crop was delivered to

and taken into the possession of the mortgagee. (Stats. of 1856, p. 87; *Quiriaque* v. *Dennis*, 24 Cal. 154; *Goodyear* v. *Williston*, 42 Cal. 11.) Section 2972 of the Civil Code, above cited, extended the lien after the crop had been harvested, so long as it remained on the land of the mortgagor, and no longer. (*Waterman* v. *Green*, 59 Cal. 142.) The only exception which has ever been allowed to this rule is that, when the crop has been tortiously removed from the land of the mortgagor by a third party, the lien of the mortgage is not lost. (*Wilson* v. *Prouty*, 70 Cal. 196; *Martin* v. *Thompson*, 63 Cal. 4; *De Costa* v. *Comfort*, 80 Cal. 507.) Defendant was not estopped from justifying the seizure under the writ of attachment in the case of *Cole* v. *Murphy*, as his representations and statements as to the removal and threshing of the grain were all true, and no misrepresentations were made. (Bigelow on Estoppel, 3d ed., 476, 484; *Lux* v. *Haggin*, 69 Cal. 255; *Griffeth* v. *Brown*, 76 Cal. 260; *Boggs* v. *Merced Mining Co.*, 14 Cal. 279–367; *Stockman* v. *Riverside etc. Co.*, 64 Cal. 57; *Dean* v. *Parker*, 88 Cal. 283; *Brant* v. *Virginia Coal etc. Co.*, 93 U. S. 326; *Morrill* v. *St. Anthony Falls etc. Co.*, 26 Minn. 222; 37 Am. Rep. 399; *Bowen* v. *Brown*, 30 N. Y. 519; 86 Am. Dec. 406.)

*George P. Burke*, for Respondent.

The removal of the crop from the land of the mortgagor did not divest it of the lien of plaintiff's crop mortgage. (*Wilson* v. *Prouty*, *supra; Rider* v. *Edgar*, 54 Cal. 127; *Martin* v. *Thompson*, 63 Cal. 4; *Byrnes* v. *Hatch*, 77 Cal. 242; *Campodonico* v. *Oregon etc. Co.*, 87 Cal. 566.) Defendant was estopped by his actions in inducing the removal of the grain from justifying the attachment. (Bigelow on Estoppel, 345; *Lux* v. *Haggin*, 69 Cal. 266.)

McFARLAND, J.—In 1893 James Murphy was the lessee of a parcel of inclosed land called field No. 1. D. W. Cole owned adjoining land called field No. 2. Murphy had executed a chattel mortgage of the crop of grain growing on his said leased land to the plaintiff,

Horgan, to secure eight hundred dollars.    In July Murphy commenced harvesting the crop and hauling it away from the land on which it had grown onto the said land of Cole, and finished doing so in the early part of August.    On September 1st Cole brought suit against Murphy and attached the grain.    Jensen and Lauritzen also brought suit against Murphy, and upon either the 1st or 2d of September attempted to levy an attachment on said grain, but it is contended that for certain reasons this last attachment was invalid.    However, Cole recovered judgment in his case against Murphy on September 7th, and Jensen and Lauritzen recovered judgment on September 8th; and executions in both cases were immediately issued and levied on the grain—the one on September 7th and the other on September 8th—and the grain was sold to satisfy these executions by the defendant, Zanetta, who was constable, and who justifies under these attachments and executions.    On September 15th plaintiff served a notice upon defendant, claiming " the possession of or a lien" upon the grain by virtue of the said chattel mortgage. Defendant proceeded and sold the grain under the executions without regarding the alleged mortgage lien; and thereafter plaintiff commenced this action to recover the eight hundred dollars secured by said mortgage, with interest and damages.    The court rendered judgment for plaintiff for five hundred and thirty-five dollars and seven cents, being the value of the grain as found by the court, together with damages, attorneys' fees, and costs.    Defendant appeals from the judgment and from an order denying a new trial.

Section 2972 of the Civil Code, as amended in 1878, provides that the lien of a mortgage on a growing crop continues " as long as the same remains on the land of the mortgagor."    Prior to 1878 the lien continued only until the crop was severed from the land.    In the case at bar.the crop had been removed from the land of the mortgagor at the time the attachments and executions were levied on it by the appellant; therefore, the lien of

the mortgage had *prima facie* been extinguished.   It
therefore devolved upon respondent to remove this
*prima facie* case by showing that the case at bar is an
exception to the general rule.   This he attempted to do
by evidence of facts which, he contends, estop appellant
from denying the continuance of the lien.   The facts
substantially are these: The land on which the crop was
raised was rough and hilly, and not suited to the plac-
ing of a machine for threshing; and, after Murphy had
commenced harvesting, there were conversations be-
tween him and Cole which resulted in Murphy hauling
the grain onto Cole's land, wnich was level and adapted
to the use of a threshing-machine.   The court finds that ·
Cole "represented" to Murphy these facts about the
character of these two different tracts of land as to their
respective adaptability to threshing, and requested him
to take the grain onto Cole's land; and, as there was no
conflict of evidence on the point, the finding must be
taken as correct.   It is quite evident, however, that
Murphy, who lived on field No. 1, must have had as
full a knowledge of the situation as Cole; and the court
finds that "the fact was as represented by Cole, owing
to the roughness of the ground in said field No. 1."   It
is not found that Cole made any false representation
in the premises.   The court, however, found that Cole
made the representation, "having then actual knowledge
of said mortgage," and for the purpose of defeating the
same; but we find no evidence to support said finding
in the statement on motion for a new trial which ex-
pressly declares that it contains "all the testimony given
by both parties on the subject of the removal of the
grain or the knowledge of Cole of plaintiff's mortgage."
Cole testified positively that he knew nothing of the
mortgage when the grain was removed, and did not
know of it until about the time of the attachment, which
was September 1st.

   The only other evidence on the subject is the testi-
mony of the witness J. W. Rowe, who said that he "had
a talk with Cole about September 4, 1893, and about

one week before, when Cole came to see me about
threshing his grain; the first talk I had with Cole was
about the 19th of August; this was on the Saturday two
weeks before the day I threshed; I threshed on Septem-
ber 4, 1893." He further said that at this conversation
Cole said that " I guess Murphy has done me up for the
rent"; that Horgan had a mortgage on record, and that
he (Cole) had been to Hollister and had seen it; but
that he was going to town to see his lawyer, and would
try to hold the grain, and would "run a bluff on Hor-
gan anyhow." This witness (Rowe) in an affidavit made
on motion for a new trial specifically states that Cole
did not say that he knew of the mortgage before the
removal of the grain onto his land, and that the con-
versation was on the second Saturday before September
4th; but, leaving that out of view, his testimony as
given at the trial is not at all to the point that Cole
knew of the mortgage at the time he talked with Mur-
phy about moving the grain. That was in July, and
the conversation between Rowe and Cole—putting it at
the very earliest period—was the 19th of August, which
was some time after all the grain had been removed by
Murphy to Cole's land, and long after Murphy had com-
menced to remove it. Indeed, the conversation with
Rowe is strong to the point that Cole had then just dis-
covered the existence of the mortgage, and was going to
ask his lawyer if he could not hold the grain for the
rent notwithstanding the mortgage. We must, there-
fore, take the facts to be that Cole did not know of the
mortgage until after the grain had been removed by
Murphy to his (Cole's) land, but that he did know of
the mortgage at the time he sued out the attachment.
It does not appear that the mortgagee used any care or
diligence in looking after the crop when harvested, or
paid any attention to the grain until after it had been
attached, which was about a month and a half after
Murphy commenced to harvest it, and nearly a month
after he had removed it from his land.

We think that under these facts Cole was not estopped

from denying the continuance of the mortgage lien, and that at the time of the attachment the said lien had been extinguished by the removal of the grain from the land of the mortgagor on which it was raised. (*Goodwin* v. *Williston*, 42 Cal. 11; *Waterman* v. *Green*, 59 Cal. 142.) The cases cited by respondent are cases where there was a tortious removal of the crop from the land on which it grew by third persons, or where the mortgagor had stored the crop at a warehouse in the name of the mortgagee at the latter's request. We see no ground upon which Cole was estopped from asserting his right as attaching creditor, or from denying the continuance of the lien. He made no false representation; the person to whom the representation was made knew the fact represented, and the respondent, who is the party asserting the estoppel, was not influenced by the representation to change his position, or to do any act to his prejudice. The case arises out of a mere contest between hostile creditors of Murphy, each standing upon his legal rights. It is true that when Cole attached he knew that there had been a mortgage on the crop, but he also knew that the lien had been extinguished by the removal of the crop from the land of the mortgagor; and he was not bound to look after the former rights of the mortgagee who had lost them by his own carelessness. These views make it unnecessary to consider appellant's justification under the execution of Jensen and Lauritzen, against whom no claim of estoppel is made.

The judgment and order denying the motion for a new trial are reversed.

HENSHAW, J., and TEMPLE, J., concurred.

Hearing in Bank denied.