[Civ. No. 9404. First Appellate District, Division One.—December 20, 1934.]

FLORA M. BRIGGS, Respondent, v. MARCUS–LESOINE, INC. (a Corporation), Appellant.

McKinstry & Haber and Pierce Coombes for Appellant.

Peter A. Breen for Respondent.

JONES, J., *pro tem.*—This is an action for money had and received. Judgment was given for the plaintiff in the trial court and defendant has appealed.

The plaintiff was employed as sales manager for a Mrs. Charest, a manufacturer of a ladies' hair tint or rinse, which was being sold under the trade name of "Lovalon". As compensation the plaintiff was paid by Mrs. Charest twenty-five per cent of the amount which she received each month for "Lovalon" sold during the preceding month. Marcus-Lesoine, Inc., the defendant, was the sole distributor of the product under a contract with the manufacturer, and as such distributor paid the manufacturer an agreed price for all of the product taken and then resold it to various merchandising houses and also direct to the consumer trade. In the beginning no relation, contractual or otherwise, existed between the plaintiff and the

defendant in so far as handling the product, is concerned. Owing to some dissatisfaction on the part of the plaintiff as to the manner in which Mrs. Charest was making payment of her commissions, a written authorization was made by the two directing Marcus-Lesoine, Inc., to withhold the twenty-five per cent of the amount due to Mrs. Charest each month and to pay the same direct to Mrs. Briggs, the plaintiff. This authorization was accepted by Marcus-Lesoine, Inc., and they proceeded to make the authorized deductions, and deposit certain moneys to the credit of plaintiff in a savings account in the Crocker First National Bank, pursuant to her directions. At no time was any of the money paid directly to her.

Plaintiff claims that Marcus-Lesoine, Inc., withheld and failed to pay over to her a portion of the commissions due from Mrs. Charest on account of purchases made by the defendant. The defendant does not dispute the deductions but claims that they were made under an agreement with the plaintiff that the deductions should be made and the money withheld. In this connection the defendant relies upon certain correspondence as constituting the agreement and upon the circumstances under which the letters were written and the conduct of the parties for an interpretation thereof. The deductions consist of (1) twelve hundred dollars on account of attorney fees paid in connection with certain litigation over patent rights relating to the "Lovalon" product; (2) cost of advertising in certain publications designated as the "Tower Magazines"; and (3) sums paid for advertising in other media.

No recovery is sought by the plaintiff for the amount of the deductions made for advertising in the "Tower Magazines", and the appellant does not seriously contend that it was entitled to deduct more than one-third of twelve hundred, or four hundred dollars, as plaintiff's share of the attorney fees referred to.

As to the charges for advertising other than that done in the "Tower Magazines", the appellant's position is that these deductions were in accordance with a contract between the parties, which, properly construed, permitted the deductions. Such agreement as was had between the parties centers upon a letter written by the plaintiff April 26, 1931, the salient portions of which are as follows: "In answer to your letter of April 18—the understanding you

and Mr. Lesoine and myself had, was the radio advertising and such circulars as were asked for, was all we would do until I returned Aug first, then we would decide about the balance of the year, I think the most important item is the chain store cards, all chain stores in the West have asked for them, now you write you are ordering posters for beauty parlors, so this changes the advertising plans. If you will note on the enclosed Tower Group card, your copy must be in three months in advance. Mr. Lesoine and I talked over the space to be used and he said he would write you all the details so I suggest you two go over the matter together. You know I have always done my share and if the advertising appropriation, will not cover the cost of the Tower Magazines, you can put me down for one-third. I feel sure it is a splendid medium, and our space should be as large as colo rinse. Am glad you are making a change in your add writer, I saw a copy of the Canadian Modern beauty magazine, and the Lovalon add is a mess, heavy black boarder looks like a death notice.''

The testimony of the plaintiff is that this is the only authority which she ever gave for the expenditure of any of her money by the defendant for advertising purposes.

As to any other authority to make the deductions claimed, L. J. Marcus, president of the defendant corporation, testified as follows:

''Mr. Breen: Q. Have you any other letters authorizing deductions? A. What is that? Q. Have you any other letters authorizing deductions for advertising? A. No, I have all these communications certifying to them. There was no need for any other authorizations. Mr. Breen: I ask that that be stricken out. The Court: Granted. Mr. Breen: Q. Will you kindly produce any other letters you have from Mrs. Geldert authorizing advertising deductions? A. I doubt if I have any other authority for advertising. Q. You have no other authority for advertising? A. No written authority. Q. Have you any other authority for advertising? A. Not authority. Q. No other authority than that letter there? A. None. The Court: Putting it so that we will undertand it better, probably,—Is it claimed by you that you received any consent or authority from the lady to make those deductions or deduction other than found in the letter just referred to? A. That is all there was. That is all that is necessary. Mr. Coombes: I don't

think the witness understands the question. The Court: Let the answer be stricken out and I will state it more simply if I can. Q. Now, it is your contention that the money sued for by this lady should not be recovered from you because she authorized the expenditure of all that you did expend? A. Right. Q. You say she authorized you to some extent so to do in the letter just read from. Now, the further question is, did she further consent to the payment of those moneys by you for advertising? Did she do it again in writing? You have no writing from her except the one just referred to? A. No, just carried on. There are none. Q. In other words, now, any authority which you may have had for the expenditure of those moneys in that manner and withholding them from her, am I to understand, is such as had in that letter? Mr. Coombes: Conversations. The Witness: You are asking for written authorities. The Court: Q. I was careful to say 'any authority'. Mr. Breen: Q. I asked you if you had any other authorization? A. We reviewed at our regular conferences our advertising mediums. Q. Only conferences at which Mrs. Geldert was present? A. Right. Q. Any conferences in which she was present, give the time, place and persons present. A. Mr. Lesoine, Mrs. Briggs and I were present. Q. When was that? A. Each time she would return from her visits. Q. I think we are entitled to something more definite than that. The Court: A little more definite, but not as definite as in some cases. Mr. Breen: Q. Were they before or after that letter? A. After; I would say approximately every two months; in the rough, about every two months. Q. Now referring directly to this advertising, relate any conversation or statement which Mrs. Briggs made to you authorizing further deductions than those mentioned in that letter. I want conversations, not your conclusions. A. I don't recall—it was just purely understood we were going on. She, in fact, was deducting the advertising. Q. You don't recollect her ever making any definite statement beyond that letter? A. There would be no need of it. Q: Answer my question. A. I don't recall any definite. Q. You recall no definite authorization beyond that letter? A. I recall nothing definite.''

There is no conflict in the testimony given by the parties that the only authority for the deductions is to be found in the letter of April 26th. The intent to limit the deduc-

tions to one-third of the cost of the advertising in the "Tower Magazines" is clearly expressed in the letter of April 26th, and such intention so expressed and ascertainable is controlling. (Civ. Code, secs. 1636, 1639.)

For the purpose of showing the interpretation placed upon the agreement between the parties, as evidenced by the letter of April 26th, the appellant has produced another letter written by the plaintiff under date of November 2, 1931, and purporting to be in reply to a letter by L. J. Marcus under date of October 28th. This letter of October 28th is not in evidence, and there is nothing in the record to show that plaintiff's letter of November 2d relates in any way to any expenditure for advertising, other than in the "Tower Magazines", as authorized in her letter of April 26th. Since the language of the letter of April 26th clearly expresses the intent to limit the expenditures authorized to one-third of the cost of advertising done in the "Tower Magazines", the letter of November 2d can avail appellant nothing as evidence of the interpretation placed upon the agreement by the parties. The circumstances surrounding the execution of a contract in writing, and the subsequent conduct of the parties thereto, may be invoked to interpret it only in those cases where upon the face of the writing itself there is doubt. (*Purdy* v. *Buffums, Inc.*, 95 Cal. App. 299 [272 Pac. 770].)

The one other contention of the appellant ·is that it would be inequitable for the plaintiff to recover, and in this connection it is urged that the plaintiff benefited by the expenditures. Where the defendant consents or agrees to appropriate money in his hands belonging to another to the payment of the plaintiff at the owner's request, an action for money had and received will lie. When the fact is proved that the defendant has the money, if he cannot show a legal or equitable ground for retaining it, the law creates ·a promise on his part to pay it over to the plaintiff which will be enforced. Unless it otherwise appears from the evidence, the burden of establishing such legal or equitable grounds for retaining the money, rests upon the defendant. (*Whittle* v. *Whittle*, 5 Cal. App. 696–701 [91 Pac. 170]; 2 R. C. L. 780.) Here the record is entirely silent as to how the plaintiff may have benefited by reason of increased commissions on account of the expenditures referred to, or otherwise, and we are of the opinion that the

defendant has failed to meet the burden of proof cast upon it in this particular. ▮ The fact that plaintiff may have been in a position to benefit indirectly from expenditures made by the defendant, which she did not authorize, and to which she did not give her consent, is immaterial.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.