[Civ. No. 3279. Fourth Dist. Feb. 27, 1945.]

JUANITA C. BASTANCHURY, as Coexecutrix, etc. et al., Appellants, v. THE TIMES-MIRROR COMPANY (a Corporation), Respondent.

Harvey, Rimel & Harvey and A. P. G. Steffes for Appellants.

Cosgrove & O'Neil, T. B. Cosgrove, John N. Cramer and Leonard A. Diether for Respondent.

GRIFFIN, J.—Action to foreclose crop mortgages and for money had and received. There appears to be little or no variance between counsel for the respective parties as to their statements of facts in the instant case. They do not agree, however, as to the legal effect of those facts. We have examined the entire record and find defendant's statement to be a full and fair recitation thereof. Therefore, we will adopt it for the purposes of this opinion.

"The Union Oil Company in 1925 entered into a Planter's Agreement with Gaston A. Bastanchury, who immediately undertook the execution thereof. On November 26, 1929, he borrowed from defendant The Times-Mirror Company the sum of $500,000, giving his note and depositing as collateral security his rights under the Planter's Agreement. He also executed a Collateral Assignment of his rights and benefits accrued and to accrue under the Planter's Agreement and agreeing to continue to perform all obligations on his part to be performed and agreeing that The Times-Mirror Company shall not be obligated to perform any of such obligations. Bastanchury Ranch Company, a corporation, executed the note as guarantor. The Union Oil Company executed a written consent to the Collateral Assignment.

"On January 28, 1931, Gaston Bastanchury assigned his rights in the Planter's Agreement to the Bastanchury Ranch Company. Union Oil Company consented to this second assignment subject to its prior consent to the Collateral Assignment to The Times-Mirror Company. Promptly thereafter (Feb. 1, 1931) Bastanchury Ranch Company borrowed from Maria O. Bastanchury $300,000, giving its note and executing as security a crop mortgage covering crops 'grown during the 1931 cropping season' under the Planter's Agreement. Simultaneously, Gaston Bastanchury (and his two brothers) executed an Agreement of Guarantee and Pledge to Union Bank & Trust Company (from which Maria O. Bastanchury had borrowed the $300,000 loaned to Bastanchury Ranch Company), guaranteeing the payment of loans made by said Bank to Maria O. Bastanchury and pledging to said Bank as collateral the stock of Bastanchury Ranch Company owned by said three guarantors. This pledge specifically recites that

said stock of said Gaston Bastanchury had been theretofore pledged by him to The Times-Mirror Company to secure the payment of said loan of $500,000, and also recites that the hypothecation of said stock to said Bank as guarantee of payment of said loan of Maria O. Bastanchury was subject to the prior pledge of said shares theretofore made to The Times-Mirror Company. Immediately (February 2) Maria O. Bastanchury assigned to Union Bank & Trust Company the $300,000 note and the 1931 crop mortgage. On the same day Bastanchury Ranch Company issued its check in the amount of $16,172.50 to The Times-Mirror Company in payment of interest due on the Gaston Bastanchury $500,000 note. Shortly thereafter (March 2, 1931) Maria O. Bastanchury was elected director of Bastanchury Ranch Company, signed Waiver of Notice and Consent to Special Meeting, and on May 4, 1931, attended a regular meeting of its Board of Directors.

"The Bastanchury Ranch Company issued its two checks on May 25, 1931, in the amount of $15,000 and $57.50 respectively to The Times-Mirror Company in payment of interest due it on the Gaston Bastanchury $500,000 note.

"On June 29, 1931, Bastanchury Ranch Company executed a Supplemental Crop Mortgage, reciting that the existing crop mortgage of January 28, 1931, covering only the 1931 crops, would be insufficient security for the payment of the $300,000 note of Maria O. Bastanchury to the Union Bank & Trust Company. On the following day (June 30, 1931) Maria O. Bastanchury assigned the Supplemental Crop Mortgage to Union Bank & Trust Company." (It should be here noted that the original and supplemental crop mortgage also included many hundreds of additional acres of oranges grown by the Bastanchury Ranch Company.)

"A receiver in Equity (state court) was appointed for the Bastanchury Ranch Company October 3, 1931, took possession of the Planter's Agreement lands and operated them until February 19, 1932. Previously (January 28, 1931) the corporate name had been changed to Bastanchury Corporation, Ltd. An Involuntary Petition in Bankruptcy against Bastanchury Corporation, Ltd. was filed shortly thereafter (Feb. 19, 1932); a Receiver in Bankruptcy was appointed (Feb. 23, 1932) who on that date took possession of the lands and the growing crops covered by the Planter's Agreement. The corporation was adjudged a bankrupt March 21, 1932. Approxi-

mately one and one-half years thereafter, viz., September 23, 1933, The Times-Mirror Company filed a Petition in the bankruptcy proceeding for Order to Show Cause why the property pledged as collateral to secure the payment of the $500,000 note of November 26, 1929 (then in default) should not be sold at Pledgee's Sale. An Order of the Referee Authorizing The Times-Mirror Company to Hold Pledgee's Sale and declaring that the bankrupt estate had no interest in the pledged property was entered September 25, 1933. On the same day (Sept. 25, 1933) the Trustee surrendered possession of the lands and growing crops covered by the Planter's Agreement to The Times-Mirror Company, which took possession and operated the property continuously until December 30, 1940, retaining the proceeds of such operation. The Trustee in Bankruptcy later (October 20, 1933) filed a Petition for Leave to Abandon. Following hearing on the Petition an Order Authorizing Abandonment and Surrender of Property by Trustee was entered (November 6, 1933). The order recites the appearance of Maria O. Bastanchury by A. P. G. Steffes, her counsel, and that no objection was made to the issuance of the order. In the meantime, following Posting of Notice of Pledgee's Sale, all property pledged to The Times-Mirror Company as collateral for the payment of the $500,000 loan to Gaston Bastanchury was sold to The Times-Mirror Company for the purchase price of $355,570, and Sheriff's Certificate of Sale was issued October 27, 1933. The Abandonment and Surrender of Property by Trustee to The Times-Mirror Company was executed November 25, 1933. Defendant, The Times-Mirror Company, continued in possession of the property covered by the Planter's Agreement, harvested the crops and retained the proceeds until December 30, 1940, when it returned and surrendered the properties under the terms of the Planter's Agreement to the Union Oil Company, the owner; plaintiff in the meantime (March 15, 1935) instituted the action at bar,'' and on March 15, 1935, filed a release of mortgage as to all property contained within the original and supplemental crop mortgages except the property mentioned in the Planter's Agreement with the Union Oil Company.

The record of the pleadings, as related by counsel for appellants, is this: On March 15, 1935, Maria O. Bastanchury (hereinafter referred to as plaintiff) filed this action against The Times-Mirror Company, as defendant (hereinafter re-

ferred to as defendant), alleging two causes of action. The first one sets forth the promissory note in the sum of $300,000, dated February 1, 1931, payable to Maria O. Bastanchury and executed by the Bastanchury Ranch Company, a corporation. Attached thereto is the original crop mortgage and the supplemental crop mortgage to which reference has heretofore been made. She alleged nonpayment of the note and that the interest of defendant The Times-Mirror Company was subject and inferior to the lien of plaintiff under her crop mortgage and supplemental crop mortgage. In her second cause of action she alleged that the defendant had received $300,000 for and on account of monies had and received to plaintiff's use and benefit. The prayer of the complaint seeks a foreclosure of the crop mortgage and supplemental crop mortgage, together with a judgment against the defendant for the principal sum of $300,000, together with interest thereon from the first day of February, 1931. On April 15, 1936, an amendment to the complaint was filed setting forth a release of the mortgage and supplemental mortgage to certain property which was included therein and which belonged to the Bastanchury Ranch Company and other parties. The release did not cover the property included in the Planter's Agreement. On May 1, 1936, plaintiff filed a supplemental complaint alleging in substance that since the filing of the original complaint the defendant had become indebted to her in the sum of $250,000 for and on behalf of monies had and received to plaintiff's use and benefit. On August 10, 1936, defendant filed its answer in which it denied substantially all of the material allegations of both causes of actions contained in the complaint and in the amendment to the complaint and set up certain defensive matters as will be hereinafter discussed.

Contemporaneously with the filing of its answer, defendant filed a cross-complaint to quiet its title against the plaintiff in and to the crops and proceeds therefrom. On March 26, 1937, defendant filed a notice of motion for leave to file an amended cross-complaint and for an order bringing in the Union Bank and Trust Company of Los Angeles (hereinafter referred to as the bank) and the Bastanchury Ranch Company and Bastanchury Corporation, Ltd. (hereinafter referred to as the Ranch Company) as new parties therein. This motion was denied.

On the issues thus presented, the case was tried before the

Honorable Homer C. Ames, as trial judge, who rendered a written opinion in favor of defendant, but before findings were presented the judge died. On July 13, 1940, defendant again filed a notice of motion to bring in as a new party the Union Bank and Trust Company of Los Angeles. This motion was granted and pursuant thereto, defendant filed its amended cross-complaint to quiet title and for declaratory relief against that cross-defendant. After issues were joined the action was tried before the Honorable George K. Scovel, Judge presiding, without a jury. The trial was concluded February 17, 1942. On January 3, 1943, plaintiff Maria O. Bastanchury died and on April 16, 1943, Juanita C. Bastanchury and Elizabeth Eadington, coexecutrices of the last will and testament of Maria O. Bastanchury, deceased, were substituted as plaintiffs and cross-defendants in the action. The court rendered its decision in favor of defendant and cross-complainant on September 14, 1943, and found in accordance with defendant's claimed defenses, which findings are substantially as follows:

That the Bastanchury Ranch Company was a corporation organized under the laws of the State of California; that on January 28, 1931, that company, by amendment of its articles of incorporation, changed its name to "Bastanchury Corporation, Ltd."; that from the time of its organization until February 7, 1931, the corporation had its principal place of business in the county of Orange; that on that date it changed its place of business from Orange County to Los Angeles County and ever since said date had its principal place of business in Los Angeles County.

The "Planter's Agreement," set out in the findings, provides generally that the Union Oil Company is the owner of certain lands in Orange County; that the planter is engaged in the business of citriculture and is able and willing to supply the knowledge and skill, supervision and management necessary to plant, cultivate and develop the lands for the purpose of growing citrus fruits thereon; that the owner desires that its lands be set out with citrus trees in the manner and to the extent that they shall produce the greatest practicable utilization of said lands for the growing thereon and marketing therefrom of citrus fruits and that for this purpose the planter be given possession of such lands for the purposes hereinafter provided; that the parties agree as follows: that the owner will furnish and make available the lands to be set out to

citrus trees and will furnish certain described facilities, but shall be reimbursed therefor in a manner therein provided; planter to furnish all laterals and water lines, etc. The owner is to pay one-half the cost of all water wells to be drilled upon the property, and the distribution thereof is to be done by the planter; to pay all taxes and charge to the owner's credit, and the owner is to be reimbursed therefor. The planter is to set out all the land with trees and all of the lands shall be planted to citrus trees within four years. Planter further agrees to supervise and manage in person all operations and activities under the contract and to devote his full knowledge, experience and skill to carrying out the contract, and agrees not to transfer to any person all or any part of his interest in the contract, or delegate to any person all or any part of his personal duties hereunder; planter to receive ''as full compensation for all work done, supplies furnished and monies expended up to and including the time when the seventh year crop shall have been harvested from each unit hereunder, *all crops which may be harvested from such unit to and including the seventh year crop.''* All expenses of the harvesting and marketing of said crops are likewise to be borne exclusively by planter. It is expressly understood that planter is taking a chance that there will be no net profits from the production and marketing of said crops, and in such case he will receive no compensation or reimbursement for said work performed, supplies furnished and monies expended; after the seventh year from the date of the completion of the planting all net proceeds remaining from the sale of crops and/or fruit after deducting therefrom taxes and interest and paying the same to the owner, shall be divided equally between the owner and the planter; owner shall at all times retain full title to said land and to all unharvested crops thereon, and shall have the right to sell all or any part of said land with the unharvested crops thereon at any time. This agreement shall be effective for thirty years and shall inure to the benefit of and be binding upon the heirs, personal representatives, successors and assigns of the parties hereto.

The court further found that on November 26, 1929, Gaston A. Bastanchury borrowed $500,000 from defendant, The Times-Mirror Company, and executed a promissory note in that sum payable to defendant company. The promissory note recites that ''I hereby *deposit with said* The Times-Mirror

Company, *as collateral security* for the *payment of this note,* the following property, namely, certain certificates of shares of stock in the Bastanchury Ranch Company, a corporation, certain certificates of shares in the Pacific Pump Works, a corporation, issued in the name of Gaston A. Bastanchury and an *assignment of all rights of Gaston A. Bastanchury* in that certain agreement dated June 15, 1925, made with Union Oil Company of California, a corporation, as evidenced by an assignment affixed to said agreement.'' In addition thereto, there was an assignment of Bastanchury's rights and interests in certain policies of life insurance (now lapsed) on the life of Gaston A. Bastanchury in favor of Bastanchury Ranch Company, a corporation. The note then provides that The Times-Mirror Company has the right to call for such additional security as it may deem proper and on failure to respond the obligation shall become due and payable and that on nonperformance of any promises therein contained or nonpayment of the note the company is given full power to sell the securities or any substitute therefor at public or private sale without any demand or notice and that the company may become the purchaser of such securities thereat. By proper endorsement the Bastanchury Ranch Company guarantees the payment of the note, to which is attached the minutes of a special meeting of the board of directors of that company as of November 25, 1929, authorizing such endorsement and guarantee. The court then found that Bastanchury ''pledged and deposited with and delivered to'' The Times-Mirror Company all of the property in said instrument specifically described; and that by a written instrument dated November 26, 1929, and concurrently with the execution of the said note and delivery of the property therein described he then executed and delivered to said company an assignment, as collateral security for the loan of $500,000, of ''all his rights and benefits accrued and/or to accrue to him under said Planter's Agreement.'' The collateral assignment provides that Bastanchury transfers and assigns to The Times-Mirror Company ''all rights and benefits accrued and/or to accrue to me (Bastanchury) under the attached contract, as collateral security for the payment to said The Times-Mirror Company of the sum of Five Hundred Thousand Dollars ($500,000.00) . . . as is evidenced by a collateral promissory note. . . . In making said assignment, I agree to continue to perform all obli-

gations on my part to be performed as is provided in the contract to which this writing is attached, and said The Times-Mirror Company, in accepting said assignment, shall not be obligated to perform, in my place and stead, any of said obligations.'' Attached thereto is the following: ''Union Oil Company of California, a corporation, hereby consents to the foregoing assignment upon the conditions and for the purposes herein named.'' The court then found that on January 28, 1931, Gaston A. Bastanchury assigned in writing *his interest* in said Planter's Agreement to Bastanchury Ranch Company. The court then specifically found ''That at the time of said assignment said Bastanchury Ranch Company had notice of said prior pledge and assignment by said Gaston A. Bastanchury to defendant The Times-Mirror Company, and said Bastanchury Ranch Company took said assignment of January 28, 1931, with notice of said prior pledge and assignment; . . . that said assignment was consented to in writing by said Union Oil Company, subject to its prior consent to said pledge and assignment from Gaston A. Bastanchury to The Times-Mirror Company.'' The consent of the Union Oil Company to the assignment of January 28, 1931, contained the following provision: Bastanchury assigns to the Bastanchury Ranch Company, its successors and assigns, ''all my right, title and interest in, to and under that certain agreement executed on June 15, 1925, between Union Oil Company of California and the undersigned.'' The acceptance of assignment by the Bastanchury Ranch Company contains the following provisions: The Ranch Company hereby accepts the foregoing assignment and agrees to assume all of the obligations, covenants and undertakings of Gaston A. Bastanchury arising under said agreement. The consent to the assignment by the Union Oil Company contains the following provision: ''This consent is given subject to the consent of the undersigned to collateral assignment from Gaston A. Bastanchury to The Times-Mirror Company dated November 25, 1929.''

The court then found that on January 28, 1931, the Ranch Company executed the crop mortgage on crops grown during the 1931 cropping season on the property owned by said Ranch Company and which included the property mentioned in the Planter's Agreement. It is then found that on February 1, 1931, the Ranch Company executed and delivered to plaintiff a promissory note in the sum of $300,000 and that

on June 29, 1931, the Bastanchury Corporation, Ltd., executed the supplemental crop mortgage above mentioned covering the same property. The resolution of the corporation attached to the supplemental crop mortgage recites that "Whereas, it now appears that said crop mortgage covering only 1931 crops upon lands more particularly described in said crop mortgage will be insufficient security for the payment of said note, and it is the desire of Mortgagor to provide additional security for the payment of said note by the execution and delivery of this Supplemental Crop Mortgage covering, in addition to 1931 crops, all crops that may hereafter be grown upon the lands described" until the note has been paid in full. Attached to the supplemental crop mortgage is the affidavit of the president and secretary of the corporation and also an affidavit of Maria O. Bastanchury, mortgagee, who was also a member of the board of directors of the Bastanchury Corporation at that time, acknowledging that the supplemental crop mortgage was made in good faith and without any design to hinder, delay or defraud any creditor or creditors.

The court then found that the supplemental crop mortgage was acknowledged on June 29, 1931, but was not recorded until July 6, 1931, in Orange County; that neither at the time of its execution nor at any time subsequent thereto was it recorded in Los Angeles County, the county in which the mortgagor, Bastanchury Corporation, Ltd., then resided and in which its principal office or place of business was then established. It was then found that at the time of the execution of the supplemental crop mortgage, plaintiff Maria O. Bastanchury "had notice and knowledge that prior thereto Gaston A. Bastanchury had borrowed a sum of money from The Times-Mirror Company and had pledged and assigned as collateral for the payment of said loan, his interest in said Planter's Agreement of June 15, 1925; and also had notice and knowledge that the assignment of Gaston A. Bastanchury dated January 28, 1931, of his right, title and interest in said Planter's Agreement to Bastanchury Ranch Company was given by said Gaston A. Bastanchury and was acquired by said Bastanchury Ranch Company subject to and with notice of said prior pledge and assignment." It is then found that the supplemental crop mortgage was not made or taken in good faith as against defendant The Times-Mirror Company; and that plaintiff "had knowledge of the existence of said

assignment dated November 25, 1929, of said Gaston A. Bastanchury to the defendant The Times-Mirror Company.''

In reference to the bankruptcy proceedings, the court specifically found that on or about September 25, 1933, The Times-Mirror Company took possession of the land of the Union Oil Company described in the Planter's Agreement, ''with the knowledge and acquiescence of and without objection by plaintiff and cross-defendant Union Bank and Trust Company of Los Angeles,'' and the trustee in bankruptcy, and at all times since September 25, 1933, and to and until December 30, 1940, defendant had been in possession of the real property, operated and maintained it, cultivated and harvested the crops thereon, and ''has removed the same from said lands, has sold said crops and retained the proceeds thereof all with the consent, knowledge, permission and acquiescence of· the plaintiff'' and of the cross-defendant Union Bank and Trust Company. It is then found in support of the finding of estoppel or waiver, that in the hearing before the referee in bankruptcy, that plaintiff Maria O. Bastanchury was represented by her counsel and that her counsel made no objection to the proposed holding of the pledgee's sale; that the referee made an order authorizing The Times-Mirror Company to hold such sale upon condition that no claim be allowed against the bankrupt estate on account of any deficiency that might arise as the result of said pledgee's sale; that in said referee's order it was found that the bankrupt estate had no equity nor interest in or to the property assigned by Gaston A. Bastanchury to The Times-Mirror Company, as security for the payment of said note in the amount of $500,000; that notice of such sale was regularly given to the creditors of said bankrupt and notice of the petition for the order authorizing and directing the trustee to disclaim and abandon as worthless to said estate any and all the right, title and interest of the bankrupt in and to the Planter's Agreement, and directing the trustee to surrender such interest of the bankrupt in that agreement to The Times-Mirror Company, as the holder of an incumbrance thereon. The court then found that in accordance with the terms of the promissory note, on October 27, 1933, all right, title and interest of Gaston A. Bastanchury arising out of the Planter's Agreement were then and there sold at pledgee's sale to The Times-Mirror Company; and that ever since said date the defendant has been and now is the abso-

lute owner of all rights or interests of said Gaston A. Bastanchury in or to said Planter's Agreement; that plaintiff was represented by counsel and no objection was made by her or her counsel to the granting of said petition or to said sale; that under the crop mortgage and supplemental crop mortgage, plaintiff acquired collateral security for the payment of the note dated February 1, 1931, other than and in addition to the crops to be grown on the land described in the Planter's Agreement, but that prior to the commencement of the action plaintiff voluntarily, and without the consent of The Times-Mirror Company, released said other and additional collateral and security.

It was then found that at the time of the commencement of this action The Times-Mirror Company did not hold any security for the payment of the note of November 26, 1929, and that all collateral pledged, assigned or hypothecated to secure said loan in the amount of $500,000 had, prior to the commencement of the action, been sold under the terms of the pledge and assignment and that title thereto had passed to The Times-Mirror Company as purchaser at the pledgee's sale.

Finding number XXXII recites that from September 25, 1933, to and including December 30, 1940, The Times-Mirror Company has operated at its own expense the lands of the Union Oil Company described in the Planter's Agreement, husbanded the crops, removed the same from the lands and sold them and retained the proceeds thereof, *all with the consent, knowledge, permission and acquiescence of plaintiff Maria O. Bastanchury and cross-defendant Union Bank and Trust Company;* and that at no time until the commencement of the within action has plaintiff or the other cross-defendant made any objection to the operation or removal of said crops nor has either made any claim to the proceeds derived from said crops; that all crops were removed and proceeds thereof were retained by The Times-Mirror Company with the consent, knowledge, permission and acquiescence of both plaintiff and cross-defendant and that they are estopped from asserting against The Times-Mirror Company any lien upon the crops or the proceeds thereof because of their failure to object to the husbanding of said crops by The Times-Mirror Company at its sole expense after having knowledge thereof.

The court then generally found as untrue the allegations of plaintiff's complaint that the crop mortgage and/or sup-

plemental crop mortgage were prior to any rights of The Times-Mirror Company or that any consent to the order of the referee was made with the specific reservation that the rights of plaintiff under their crop mortgage or supplemental crop mortgage were prior or superior to the rights of The Times-Mirror Company.

It then found that The Times-Mirror Company took possession under the pledgee's sale and under the order of the referee in bankruptcy and the disclaimer, quitclaim, and surrender of the trustee in bankruptcy, and that the mortgagors named in the crop mortgage and supplemental crop mortgage ceased to have any interest in the crops growing on said lands at the time said defendant and cross-complainant took possession as aforesaid and ceased to have any interest in the Planter's Agreement or in the lands included in the Planter's Agreement.

The court then denied the plaintiff's right of recovery under the complaint and rendered judgment in favor of defendant quieting its title to all crops growing and maturing on the premises on and after October 27, 1933, and prior to December 30, 1940, and to all proceeds derived therefrom and to the interest of Gaston A. Bastanchury, his sucessors and assigns under said Planter's Agreement.

Counsel for defendant have prepared extensive briefs and presented many legal theories upon which it is claimed the trial court's judgment might be supported. The first is that from an examination of the entire record, plaintiff is now estopped from claiming the lien upon any of the crops or their proceeds after consenting to and allowing defendant to enter into possession of the property and finance the cultivation, care, fertilization and irrigation of it, and after harvesting and selling the crops without any objections; that since she consented to and acquiesced in the removal of the crops from the lands upon which they were grown she waived her lien (if any) upon such crops and to the proceeds therefrom.

Other theories presented are, second, that plaintiff had no lien upon the crops in question because there was no recordation of the supplemental crop mortgage in the county where the corporation had its principal place of business, citing *Fassett* v. *Wise,* 115 Cal. 316 [47 P. 47, 1095, 36 L.R.A. 505]; former Civil Code, section 2959; *Gallup* v. *Sacramento etc. Drainage District,* 171 Cal. 71 [151 P. 1142]; and *Noyes* v.

*Bank of Italy,* 206 Cal. 266 [274 P. 68]. Third, that the evidence is sufficient to justify the finding of fact and conclusion of law that defendant acquired a lien upon the crops and the proceeds from the sale thereof by virtue of a valid pledge of the rights of Gaston A. Bastanchury under the Planter's Agreement to The Times-Mirror Company, citing *Joint Pole Assn.* v. *Steele,* 213 Cal. 233 [2 P.2d 335]; *Brewster* v. *Hartley,* 37 Cal. 15 [99 Am.Dec. 237]; and that there was a valid sale of the pledged property which sale terminated the lien, if any, of plaintiff on all crops not harvested at the time of sale, citing *Penryn Fruit Co.* v. *Sherman-Worrell F. Co.,* 142 Cal. 643 [76 P. 484, 100 Am.St. Rep. 150]. Fourth, that termination of Bastanchury Corporation, Ltd.'s interest in the Planter's Agreement likewise terminated the rights of its mortgagee in any crops thereafter grown, citing *Fisher* v. *Chaffee,* 49 Cal. App.2d 97, 99 [121 P.2d 51]. Fifth, that plaintiff, at the time she acquired her supplemental crop mortgage, had knowledge and notice of the prior pledge and assignment in favor of The Times-Mirror Company, citing such cases as *First National Finance Corp.* v. *Five-O Drilling Co.,* 209 Cal. 569, 573 [289 P. 844.]

Counsel for plaintiff have elaborately discussed the points and theories presented by counsel for defendant and cited many cases which they contend support their argument in opposition thereto.

■ We are convinced, from an examination of the entire record, that the evidence fully supports the trial court's finding on the first theory, i. e., that the representatives of plaintiff are now estopped from claiming, and have waived their rights to the proceeds from the sale of the crops in dispute, and that they are not entitled to recover under the complaint. It will therefore not be necessary to consider the merits of the other theories upon which the judgment might be supported.

■ It is conceded here that defendant did not take or have possession of the land and crops here involved until September 25, 1933, which was after the pledgee's sale. This action, therefore, does not involve any crops or proceeds derived therefrom prior to that time. All of the crops, including 1931, were harvested, removed from the land, and disposed of, apparently, with the consent and acquiescence of the plaintiff. If any lien was created on those crops or proceeds, by virtue of the original or supplemental crop mortgage, for the

years previous to September 25, 1933, such liens, if any, have been lost to plaintiff.

Section 2972 of the Civil Code provides: "The lien of a mortgage on a growing crop continues on the crop after severance, whether remaining in its original state or converted into another product, so long as the same remains on the land of mortgagor."

There are numerous cases construing this code provision. (*Horgan* v. *Zanetta*, 107 Cal. 27 [40 P. 22]; *I. S. Chapman & Co.* v. *Ulery*, 15 Cal.App.2d 452 [59 P.2d 602].)

In *Gates* v. *Tom Quong*, 3 Cal.App. 443, at pages 446-447 [85 P. 662], the court said: ". . . although it [the lien] was lost by the severance of the crop and its removal from the demised land, the cases recognize an exception to the rule of the code where there is a tortious removal of the crops." In that case the court concluded that the removal was not tortious and that after removal of the crops there was no lien in favor of the mortgagee against either the crops or the proceeds.

In *Valley Bank* v. *Hillside Packing Co.*, 91 Cal.App. 738 [267 P. 746], it was held, under similar circumstances, that the money received for the crops was released from the operation of the lien *except as between the original parties to the loan.* In this connection plaintiff argues that defendant, by virtue of the pledgee's sale, "stepped into the shoes" of the Ranch Company and therefore the money received from the crops retained the lien because it was in effect between the original parties to the loan.

The question of the validity of the lien of the original 1931 crop mortgage on that particular crop or its proceeds has become moot, and any decision as to priority of liens in connection therewith presents merely an academic question unnecessary to decide at this time (2 Cal.Jur. § 472, p. 803.)

Plaintiff agrees that defendant was peaceably and under a claim of right let into possession of the property and crops in the year 1933, and subsequently cultivated, husbanded and disposed of them without objection on her part. She further admits that she had previously made proposals and had previously but conditionally agreed with defendant Times-Mirror Company, through her attorney, that in the event the company proceeded to sell at a pledgee's sale all of the property mentioned in the pledge, it might manage and control the operation of the property and plaintiff would then be allowed

and permitted to redeem all of the pledged property upon payment to defendant company of the balance due upon Bastanchury's note for $500,000 payable to The Times-Mirror Company, and that the period for redemption would be fixed at a later date for a period of from one to four years (Defendant's Exhibit F-1), but claims, through her counsel, that at all times she stated that she wished to preserve any rights she had to her claimed prior lien and to bring an action to recover the proceeds of the crops grown upon the property and that she consented to the agreement because of some hope entertained by her counsel through conversation or communications with Mr. Chandler, president of defendant company, that some compromise would be effected.

Counsel for plaintiff testified that subsequent to the pledgee's sale and after the hearing before the referee in bankruptcy, he informed the referee, by letter (Defendant's Exhibit F-1) of the conditions under which he had consented to the order. He also testified that after the sale by the referee in bankruptcy, this action on the note was filed merely "to toll the statute of limitations" and that no objections to the defendant's collecting the proceeds from the crops were made "because of the financial solvency" of defendant company.

There was evidence, if believed by the trial court, substantiating plaintiff's contention that the agreement was a conditional one. However, the trial court apparently disregarded that portion of plaintiff's evidence, which it had a right to do (*Whitechat* v. *Guyette,* 19 Cal.2d 428, 435 [122 P.2d 47]), and found that the plaintiff's consent to the order of the referee was not made with any specific reservation or condition and that the removal of the crops and the retention of the proceeds thereof was with her unconditional consent, knowledge, permission and acquiescence. There is evidence to support this finding. Defendant openly claimed its right to possession through a pledgee's sale under its claim of lien and without objection on the part of plaintiff or her assignee and with her apparent consent. She permitted defendant to enter into possession of the property, finance, at great expense, the cultivation, care, fertilization and irrigation of the crops, harvest and sell them, and during all of that time she stood by and took her chances on a net profit being made with no liability on her part in case of loss.

The reason the trustee in bankruptcy relinquished his duty

of operating the property was due to the fact that it was operated at a net loss. Plaintiff should not now be permitted to seek a recovery by means of a money judgment based upon a wrongful conversion of the crops by defendant rather than attempt to make timely foreclosure of her claimed crop mortgage lien. (*Fowler* v. *Ozcoidi*, 7 Cal.2d 268 [60 P.2d 279]; *Gribble* v. *Columbus Brewing Co.*, 100 Cal. 67 [34 P. 527]; *Miller & Lux* v. *Kern etc. Co.*, 154 Cal. 785 [99 P. 179]; *Verdugo Canon Water Co.* v. *Verdugo*, 152 Cal. 655, 683 [93 P. 1021]; *Blood* v. *La Serena L. & W. Co.*, 113 Cal. 221 [41 P. 1017, 45 P. 252]; Civ. Code, §§ 3521 and 1589; Code Civ. Proc., § 1962, subd. 3; *Dool* v. *First Nat. Bank of Calexico*, 209 Cal. 717 [290 P. 15]; *Banning* v. *Kreiter*, 153 Cal. 33 [94 P. 246]; *Dessert Seed Co.* v. *Garbus*, 66 Cal.App.2d 838 [153 P.2d 184]; *Allen* v. *Hance*, 161 Cal. 189 [118 P. 527]; *Austin* v. *Hallmark Oil Co.*, 21 Cal.2d 718, 734 [134 P.2d 777].)

In connection with the claimed waiver or estoppel, it may be stated that Mrs. Bastanchury filed her claim in bankruptcy on the notes here involved, set forth a statement of the crop mortgages in which she recites that "said creditor . . . does hereby disclaim any right which she may have under the laws of the State of California to enforce payment of any of the aforesaid debts . . . of said bankrupt in her favor separately from or in or by any action or procedure independently of procedure for the enforcement of her said agreements of security and/or the securities therein provided."

Equity would not now permit plaintiff to release what appears to be a major portion of her security under her so-called lien by virtue of the crop mortgages, which mortgages cover the property here involved as well as additional property of the ranch company, without defendant's consent and thus burden defendant's interest in the crops and proceeds therefrom with the entire obligation. It further appears that defendant's claim to the crops and proceeds thereof was apparently based upon the supposition that it possessed a prior lien upon those crops and the proceeds therefrom by virtue of its pledge. Plaintiff's attorney fully understood and had notice of such claim. The alleged claim of plaintiff under her supplemental crop mortgage was set forth in defendant's petition to creditors for an order to show cause why that and other property therein mentioned should not be sold at the pledgee's sale. Plaintiff appeared and made no objection thereto, and

according to the findings, the apparent abandonment or waiver of her claimed prior lien was unconditional. Surely, plaintiff cannot now be heard to claim that new life has been breathed into her so-called supplemental crop mortgage and claimed lien so as to permit a recovery from this defendant under the claim of wrongful conversion. The gist of plaintiff's complaint against defendant, according to her closing brief (p. 134) is "the conversion" by defendant of those "crops" which were "subject to her lien."

One who holds property by virtue of a lien upon it may maintain an action for conversion if the property was *wrongfully* disposed of by the owner and without authority, in which case the measure of damages can be no greater than the amount secured by the lien and for loss of time and expenses in pursuit of the property. (*Connell* v. *Hogg,* 181 Cal. 730 [186 P. 134]; *Treadwell* v. *Davis,* 34 Cal. 601; *Atkins* v. *Gamble,* 42 Cal. 86; Civ. Code, §§ 3336-3338; 24 Cal.Jur. § 31, p. 1056.)

In such an action it is not essential that plaintiff shall be the absolute owner of the property converted but she must show that she was *entitled to immediate possession at the time of conversion.* (*Imperial Valley L. Co.* v. *Globe G. & M. Co.,* 187 Cal. 352 [202 P. 129]; *Lowe* v. *Ozmun,* 137 Cal. 257 [70 P. 87].)

The foundation of an action for conversion on a money had and received count is the unjust enrichment of the wrongdoer, and in order for plaintiff to recover in such action she must show that a definite sum, to which *she* is justly entitled, has been received by defendant. (*French* v. *Robbins,* 172 Cal. 670 [158 P. 188].) Defendant has the right thereunder to show that it disbursed the money sued for in due course of the business between itself and the plaintiff and to show any facts which entitle it to retain the money sued for, either upon legal grounds or upon equitable grounds by way of estoppel or waiver. If the right of the defendant to retain the money is equal to that of plaintiff, the defendant must prevail. (*Whittle* v. *Whittle,* 5 Cal.App. 696 [91 P. 170]; *Hallinan* v. *Hearst,* 133 Cal. 645 [66 P. 17, 55 L.R.A. 216]; *Mauss* v. *Kato,* 117 Cal.App. 663 [4 P.2d 179]; *Briggs* v. *Marcus-Lesoine, Inc.,* 3 Cal.App.2d 207 [39 P.2d 442]; *Hillwig* v. *Boyer,* 81 Cal.App. 763 [254 P. 662].)

There is no evidence to support any contention of

plaintiff that defendant company took over the management of the property and harvesting of the crops with the understanding that the proceeds from the sale thereof would *first be applied to the payment of plaintiff's claimed crop mortgage lien.* There is evidence, however, that defendant company entered into possession of the property, under a claim of right to the crops and their proceeds and that such proceeds might be applied to the payment of the note and pledge due defendant company and that plaintiff might be privileged to redeem the defendant's interest as well as any interest of the Ranch Company therein within an undetermined number of years ranging from one to five. That plaintiff was willing for defendant company to take over the operation of the ranch for a five-year period and endeavor to pay off all of the indebtedness is clearly expressed in her letters to Mr. Chandler (Defendant's Exhibits XX and YY), which read in part as follows:

"Dear Mr. Harry Chandler. I take the liberty to tell you in few words Miss Yaeger gave you the letter which my attorney made without my permission so I do not wish to sign those papers. Now I ask you for your advice for what I should do. My intention is to clean out the bankruptcy court. It is a benefit to you and the Union Oil Company and myself. If we keep together, this is better. I hope you and the Union Oil Company will help me. Sincerely, Maria O. Bastanchury."

The second letter received by Mr. Chandler about September 25, 1933, at the time he took possession of the ranch, reads as follows: "Mr. Harry Chandler, My dear Mr. Chandler. I am very glad now and I guess you are to now the bankruptcy is out from the ranch. Now we will know where will go the money. I have all my confidence on you because you are main body so I trust you. And when you make new arrangement you remember every 3 partys *aproportions* equal. You head be and with good management within 5 years all *indepness* be paid. We are not afraid we seen before this bad times too well now I ask you pardon if I have offense you talking too much to you. Respectfully your, Maria O. Bastanchury."

Just how the proceeds were to be applied is not clearly expressed in the letters. The trial court's determination that such proceeds might be first applied to the indebtedness due

defendant company is not unreasonable because the company was financing the growing and harvesting of the crops and was taking all the chances on the project being a total loss without plaintiff assuming any liability in any manner. Apparently the net profits from the operation were not sufficient to warrant the expenditures required. Plaintiff did not offer to exercise her claimed right of redemption. The Planter's Agreement was surrendered to the Union Oil Company.

The evidence shows that the bank advised Mrs. Bastanchury that she shouldn't make the loans above mentioned because she was foolish to obligate herself to the Union Bank in that sum of money as she was then comfortably fixed and if the Ranch Company did not repay her she would be stripped of practically everything she had; that she advised them she wanted to loan it to the boys to help them out; that she thought she had fine security and that she became rather hostile because the bank did not want to loan her the money; that the bank official "started to let her have it" and she replied that "she had been a customer of the bank for a good number of years—— and she expected to borrow the money and she expected the bank to loan it to her"; that the bank official then said that he would loan it to her but if she didn't get her money back from the Ranch Company that she would be held to pay this obligation herself. Although it was stipulated at the trial that Mrs. Bastanchury would testify, if present, that she did not know "of the existence" of the assignment of the Planter's Agreement to the defendant at the time she took the supplemental crop mortgage, the evidence would indicate otherwise because it shows, in addition to the matters herein related, that throughout these transactions and negotiations she was in constant communication with cross-defendant Union Bank and Trust Company and also her sons who were members of the board of directors of the Ranch Company. The bank's officials advised her in her negotiations with that company. They all had actual notice of the assignment of the Planter's Agreement to defendant. Mrs. Bastanchury was a director of the Ranch Company when the supplemental crop mortgage was executed and one of the bank's officers was made secretary-treasurer thereof, at the bank's request, and took an active part in managing its financial affairs. It will not be presumed that her sons and the bank officials were parties to a fraud in inducing her to make the loan by misrepresenting

or suppressing the fact of the prior loan and assignment. The presumption is always against fraud. (*Truett* v. *Onderdonk,* 120 Cal. 581 [53 P. 26].)

The trial court specifically found that the supplemental crop mortgage was not made nor taken in good faith. Knowledge or notice of such facts and circumstances as would make the taking of a negotiable instrument a taking in bad faith is generally a question of fact for the jury or trier of facts, and when the evidence is conflicting or is such that reasonable minds might draw different conclusions therefrom, it is for the jury or trier of facts to determine whether plaintiff knew of such facts and circumstances as would make the taking of the instrument a taking in bad faith, and this is so even where the holder may testify that he received it without knowledge or notice of defect in title or other legal defense, if there are other circumstances or other evidence contradicting it from which an adverse inference might be drawn. (11 C.J.S. § 699c, p. 207; *Barthelmess* v. *Cavalier,* 2 Cal.App.2d 477 [38 P.2d 484].)

The evidence fully supports the conclusion that not only Mrs. Bastanchury but also the Union Bank and Trust Company, at the time of the execution of the supplemental crop mortgage, had actual notice within the meaning of section 2973 of the Civil Code, as well as constructive notice under section 19 of the Civil Code of the prior assignment to defendant; that they acquiesced in or consented to the actions later taken; and that neither was an innocent holder of nor purchaser in good faith of the Ranch Company's notes and crop mortgages, for value and in due course under sections 3133-3138, Civil Code. (*Ocean Shore R. R. Co.* v. *Spring Valley Water Co.,* 218 Cal. 86 [21 P.2d 588]; *Phillips* v. *Phillips,* 163 Cal. 530 [127 P. 346]; *Enterprise Foundry & Machine Works* v. *Miners' Elkhorn Coal Co.,* 241 Ky. 779 [45 S.W.2d 470]; *Greenville Gas Co.* v. *Reis,* 54 Ohio St. 549 [44 N.E. 271]; *Gay* v. *Young Men's Consol. Co-Op. Mercantile Inst.,* 37 Utah 280 [107 P. 237]; *Darling & Co.* v. *Petri,* 138 Kan. 666 [27 P.2d 255].)

Without discussing the merits of plaintiff's and defendant's arguments as to which claimed lien was prior in point of time, it cannot be said under the evidence of this case that defendant's claim of title to the proceeds of the crops here involved was unjustified or constituted an unjust

enrichment. (*Joint Pole Assn.* v. *Steele, supra; McCaffey Canning Co., Inc.* v. *Bank of America,* 109 Cal.App. 415 [294 P. 45] ; *Gay* v. *Moss,* 34 Cal. 125 ; *Brewster* v. *Hartley, supra; Cannon* v. *Chapman,* 24 Cal.App.2d 448 [75 P.2d 522].)

■■■ Whether the established facts in any given case constitute, in its most technical sense, an "equitable estoppel" or a "waiver" is not always easily distinguishable. These terms are sometimes employed indiscriminately. (*McCormick* v. *Orient Insurance Co.,* 86 Cal. 260 [24 P. 1003] ; *First National Bank of L. A.* v. *Maxwell,* 123 Cal. 360 [55 P. 980, 69 Am.St.Rep. 65] ; *Wheaton* v. *North British & Mercantile Insurance Co.,* 76 Cal. 415 [18 P. 758, 9 Am.St.Rep. 216].) Strictly speaking, the latter is used to designate the act or the consequence of the act of one person only, while the former is applicable where one's conduct has induced another to take such a position that he will be injured if the first be permitted to repudiate his acts. (25 Cal.Jur. § 2, p. 926.)

■■■ A waiver is the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right and may result from an express agreement or be inferred from circumstances indicating an intent to waive. (*Davis* v. *Brinkhouse Hotel Co.,* 74 Colo. 199 [219 P. 1074] ; *Johnson* v. *deWaard,* 113 Cal.App. 417 [298 P. 92].)

The rule is clearly stated in *Michaels* v. *Pacific Soft Water Laundry,* 104 Cal.App. 349 [286 P. 165, 1071], that one may waive a right given by contract or advantage of law intended for his benefit. (See, also, Civ. Code, § 3513.)

Estoppel has been variously defined and contains several necessary elements. (10 Cal.Jur. § 14, p. 626 ; *Smith* v. *Anglo-California Trust Co.,* 205 Cal. 496 [271 P. 898] ; *California Pear Growers Assn.* v. *Herspring,* 60 Cal.App. 503 [213 P. 518].)

Whether some of the facts established in the instant case constituted a waiver within its strict sense or, when considered as a whole, constituted an equitable estoppel in its most technical sense, is not readily distinguishable.

We are convinced, however, that there are sufficient facts to support a finding of an equitable estoppel or a waiver of plaintiff's claimed right to a prior lien on the crops involved

and to the proceeds thereof and that there was no wrongful conversion of plaintiff's money.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied March 27, 1945, and appellants' petition for a hearing by the Supreme Court was denied April 26, 1945.